(No. 22660.—

PAULINE BRUNOTTE, Appellee, *vs.* LOUIS DEWITT *et al.* Appellants.

*Opinion filed April 17, 1935—Petition stricken June 5, 1935, for violation of Rule 44.*

Ernest L. Duck, and Runyard & Behanna, for appellants.

William G. Lesemann, for appellee.

Mr. Justice Herrick delivered the opinion of the court:

On an amended bill of complaint filed by Pauline Brunotte in the circuit court of Lake county against the defendants, who are appellants here, the court entered a decree finding and declaring a perpetual easement in a certain passageway, enjoining the defendants from obstructing such easement, and directing them to remove the obstructions therefrom within thirty days.

On and prior to October 3, 1921, Matilda McAuley, a spinster, owned in fee simple lot 30 of Whitewood subdivision of the northeast quarter of the southwest quarter of section 18, township 45 north, range 10 east of the third principal meridian, in Lake county. She also owned the contiguous land on the west, of the same width north and south as lot 30 and extending beyond the shores of Long Lake to the west line of the quarter section. Lot 30 constituted a parcel of land approximately 66 feet in width from north to south, and from Hickory lane on the east the lot extended west approximately 400 feet. From a plat of the subdivision it appears that a road or street called Lake drive, 30 feet wide, extends along the north side of lot 30. On the day named, and thereafter, Miss McAuley conveyed lot 30, and the parcel of land adjacent to it on the west, in eight separate tracts to different grantees. A

clear understanding of the situation presented by the bill can be better obtained from the following drawing:

On October 3, 1921, Miss McAuley by a warranty deed conveyed tract 1 to Maude Bliss and granted an easement for passage, light and air over the south three feet of the

remainder of lot 30 and of the parcel of land adjoining it on the west. The deed recited that this conveyance was subject to a like easement over that portion of the lot conveyed, and stated that "the intention of the grantor and the grantee herein being to create a perpetual easement for the uses hereinbefore stated for the benefit of all present and future owners and tenants of said lot thirty (30) and parts thereof over the south three (3) feet of said lot and over a sufficient portion of the south three (3) feet of said parcel of land adjoining said lot and extending into said lake, as will always give such owners and tenants free access to the waters of said lake." On the same day Miss Mc-Auley conveyed tract 2 to Fannie Murray, and the conveyance was made subject to the easement created in the deed to Maude Bliss. On June 20, 1922, the original owner conveyed tract 3 to Mrs. Bliss by a deed which granted an easement over the remainder of the south three feet of lot 30 and the parcel to the west and made the conveyance subject to a like easement over tract 3. William Brunotte and Pauline Brunotte, his wife, became the owners in joint tenancy of tract 2 on June 30, 1923, "together with all the rights and benefits, and subject to an easement created in warranty deed dated October 3, 1921, from Matilda McAuley to Maude Bliss." William Brunotte died in 1929 and his wife became the sole owner of this tract. By a deed dated July 1, 1925, Miss McAuley conveyed tracts 4, 5 and 6 to Louis DeWitt and Alice S. DeWitt, his wife, as joint tenants, subject to the easements of right of way in the south three feet thereof in the owners of the remaining portions of lot 30. The deed also granted them an easement of right of way over the south three feet of tracts 1, 2 and 3. A trust deed in the nature of a purchase money mortgage was executed by DeWitt and his wife on the same day, and it was expressly made subject to the easement in the same language as employed in the deed from Miss McAuley to them. Tract 7, the west-

ernmost part of lot 30, and tract 8, the land to the west of lot 30, were conveyed in 1927 and re-conveyed four years later without reservations or conditions. Tracts 1 and 3 were re-conveyed by Maude Bliss and her husband by a deed dated July 1, 1931, reserving an easement for passage, light and air over the south three feet of the remainder of lot 30 and the parcel of like width adjoining the lot on the west. The conveyance was made subject to a similar easement over tracts 1 and 3 for the benefit of all present and future owners and tenants of the lot. The owners of these four tracts, namely, 1, 3, 7 and 8, are not parties to this suit.

The warranty deeds from Miss McAuley to Mrs. Murray, and the re-conveyance by the latter to the complainant and her husband, described tract 2 as the east 65 feet of lot 30 in Whitewood subdivision, "being a subdivision of the *northeast* quarter" of said section 18. The warranty deed to Mrs. Bliss described tract 1 as the west 72 feet of the east 271 feet and tract 3 as the west three feet of the east 199 feet of lot 30 in Whitewood subdivision, "being a subdivision of the *northeast* quarter" of said section 18. Each of these four deeds misdescribed Whitewood subdivision as "a subdivision of the *northeast* quarter," whereas the particular subdivision is located in the *northeast quarter of the southwest* quarter of said section 18. The deed conveying tracts 4, 5 and 6 to the defendants properly described the land. Likewise, the property is correctly described in their trust deed executed on the same day. Tracts 1 and 3 are correctly described in the deed dated July 1, 1931, executed by Mrs. Bliss. The defendants objected to the introduction of the first four deeds in evidence on the ground that the descriptions were at variance with the property mentioned and described in the bill of complaint. Subject to the objections the deeds were admitted in evidence. William F. Brunotte, a son of and a witness for the complainant, testified that he had exam-

ined the records and plats in the recorder's office and that there was only one Whitewood subdivision in the section, township and range designated. This testimony is not contradicted.

A five-room cottage is located on tract 2 and the complainant resides there in the summer. The defendants occupy a larger dwelling on tract 4. Both of these houses were located on lot 30 when Miss McAuley conveyed tracts 1 and 3 on October 3, 1921. At that time there was a chicken-wire fence approximately three feet in height along the entire west line of tract 2, including the south three feet dividing it from tract 4. The fence continued in place, remaining there when the complainant and her husband acquired title to tract 2 and the defendants to the adjoining tract. On October 3, 1921, an out-house seven feet long and five feet in width was situated at the southeast corner and on the south three feet of tract 2. About July, 1925, the complainant caused it to be removed to another part of her property. On the south three feet of tract 4, approximately five feet west of the fence dividing the property owned by the litigants, there was a lattice-work three feet wide and about seven feet high extending from the south line of the tract across the three-foot strip and connecting with an out-house located on the defendants' property north of the three-foot strip in controversy. No change in the location or construction of the lattice has taken place. When the complainant purchased tract 2, in 1923, there was a flower-bed in the southwest corner. That part of the flower-bed extending over the south three feet was removed about July 15, 1925, and following its removal no part of it was on the south three feet of tract 2.

Preliminary to purchasing tract 4 the defendants inspected lot 30 about May 1, 1924. On the 19th day of that month they made a deposit of $250 on the purchase of the premises and took possession on the following Saturday. In addition to the fence between tracts 2 and 4,

the out-house and flower-bed on the south three feet of the former tract and the lattice on the latter, it appears from the testimony adduced by the defendants that there was a rubbish heap on the strip across tract 4 between the fence and the lattice. On the strip in question there was also a garbage-bed extending about six feet north from the south boundary of tract 4 and about 30 feet east and west. A board walk extended west and east along the north line of the garbage-bed. From a point commencing at the west edge of the garbage-bed there was an open passageway between fences to the lake.

One Geissler owned the premises directly south of lot 30. From 1923 to July, 1925, there were openings in the fence between tract 2 and Geissler's property. During this period the complainant and her family usually passed from her property through openings in the Geissler fence and along the north side of his property in order to reach the shores of Long Lake. When they occasionally used the south three-foot strip of lot 30 as far as possible, an opening was caused to be made in that part of the fence across the strip dividing tracts 2 and 4. They then traversed the south three feet of tract 4 to the lattice-work, proceeded around the obstruction and the out-house to the three-foot strip, and on the strip to the lake. In the summer of 1925 Geissler erected a new fence along the north line of his property. Following the erection of this fence the complainant removed that portion of her fence on the west line of tract 2 across the three-foot strip. Thereafter she and her family used the strip, as far as possible, to reach the waters of the lake except when prevented by the defendants. In particular, the evidence discloses that in July, 1925, and again in the summer of 1930, the defendants prevented members of the complainant's family from proceeding on the passageway to the lake. It also appears that the complainant and her family sometimes used Lake drive to the north of lot 30 as a mode of access to the lake.

An attorney who is a son-in-law of the defendants, in June, 1924, made a search of the records of the recorder's office of Lake county and ascertained the existence of the clauses granting easements in each of the deeds from Miss McAuley to Mrs. Bliss and to Mrs. Murray and from the latter to the complainant. In addition to informing the defendants he interviewed the original grantor regarding the easements and demanded from her a release of the easement over the south three feet of tract 4. According to the attorney's testimony, Miss McAuley stated that she owned the whole of the property she had contracted to sell to the defendants; that there was no easement over it, because she, Mrs. Murray and Mrs. Bliss had agreed to give up their respective rights to walk along the south three feet of the respective tracts, and that she promised him she would endeavor to obtain from the Blisses and the Murrays a deed releasing their rights in tracts 2, 4, 5 and 6 and to the south three feet of tracts 1 and 3. The evidence does not disclose when the alleged agreement among the three women was made. Neither Mrs. Bliss nor Mrs. Murray was present at the conversation between the attorney and Miss McAuley and no release was ever obtained from these two ladies. On July 1, 1925, subsequent to Miss McAuley's alleged statement to the attorney, she executed the deed to tracts 4, 5 and 6 subject to the easement and granted the defendants an easement over the south three feet of the five remaining tracts of lot 30 and the land to the west.

Additional facts and circumstances appear from the record. The complainant testified that shortly after May 19, 1924, she notified Mrs. DeWitt, one of the defendants, that the lattice was blocking the passageway; that if the defendants intended to purchase tract 4 she desired hinges placed on the lattice in order that she could use the easement, and that Mrs. DeWitt assented to her request. On the other hand, this statement is not only denied, but the

attorney testified that between July 15 and September 10, 1925, the complainant and members of her family asked the defendants to remove the lattice. Mrs. DeWitt testified that her first conversation with the complainant respecting the obstruction took place over a year following her entry into possession of tract 4. Persis D. Carr, one of her daughters, testified that her mother refused to remove the lattice in 1925. The master found that the demand for the removal of the obstruction was made in 1924 and that Mrs. DeWitt promised to remove it.

The decree specifically found that the complainant was not able to pass over the entire three-foot strip from her property to the waters of Long Lake owing to the lattice-work across, and the garbage-bed maintained by the defendants on, the south three feet of tract 4; that the defendants had notice of the easement and the complainant's claim immediately upon entering into possession and more than a year prior to their acceptance of the deed from Miss McAuley, dated July 1, 1925; that the defendants obstructed the easement, rendering its use by the complainant impossible, and that they refused to comply with the latter's request to remove the lattice-work.

To obtain a reversal of the decree the defendants make several contentions. Of these, the first is that there is a fatal variance between the allegations of the complainant's bill and the proof. Their argument is that the deeds of the common grantor, Matilda McAuley, to Maude Bliss and Fannie Murray, and of the latter to the complainant, are void because of a misdescription not apparent on the face of the deeds. To sustain the decree the complainant maintains that prior to the acceptance of their deed the defendants had notice, both actual and constructive, of an easement appurtenant to lands being purchased, and that in consequence they were not misled by the descriptions contained in the deeds.

The purpose of a description of land contained in a deed of conveyance being to identify the subject matter of the grant, a deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey. (8 R. C. L. 1074; *Patterson* v. *McClenathan,* 296 Ill. 475; *Brenneman* v. *Dillon,* 296 id. 140; *Smith* v. *Crawford,* 81 id. 296; *Colcord* v. *Alexander,* 67 id. 581.) Any description by which a parcel of property may be identified by a competent surveyor with reasonable certainty is sufficient. (*People* v. *Astle,* 337 Ill. 253; *People* v. *Southern Gem Co.* 332 id. 370; *Koelling* v. *People,* 196 id. 353.) A false or repugnant description may be rejected for the purpose of giving effect to the deed if the true words are sufficient to designate the land with sufficient certainty after eliminating the false description. (*Bimslager* v. *Bimslager,* 323 Ill. 303; *Brenneman* v. *Dillon, supra; Patterson* v. *McClenathan, supra.*) The description in a deed of property in "Frye's addition" to the city of Peoria has been deemed sufficient to identify property located in "Smith Frye's addition," it appearing there was no other Frye's addition in that city. *Langlois* v. *Cameron,* 201 Ill. 301.

Numerous authorities, however, are invoked by the defendants to sustain their claim that the deeds were void and passed no title to the easement, thereby precluding the complainant from establishing the creation of an easement in the grant and its transfer to her. Of these, it appeared in *People* v. *Astle, supra,* that the description contained a patent ambiguity—one which cannot be cured by extrinsic evidence. Reliance is also placed on *Chicago and Alton Railroad Co.* v. *Langer,* 288 Ill. 16. The land in controversy in that case was a part of the northwest quarter of section 28, in town 10, range 13, in Greene county. One Farrow owned this quarter section with the exception of a strip off the east side of it, and executed a quit-claim

deed conveying to a railroad company "a right of way of 100 feet in width for so much of said railroad as may pass over or through the following described real estate: Near the southeast corner of the northwest quarter of section 28, thence due west three-fourths of a mile, thence to the northwest corner of section 29, suitable ground for depot of two acres, * * * situate in the county of Greene and State of Illinois." So far as is pertinent to this inquiry, the court observed that the description in Farrow's deed did not describe any specific tract of land and was so indefinite that the precise boundaries could not be located. Again, in *Illinois Central Railroad Co.* v. *O'Connor,* 154 Ill. 550, cited by the defendants, the description was substantially the same as that in the deed in controversy in *Chicago and Alton Railroad Co.* v. *Langer, supra,* and was held insufficient to convey the title. These two cases are not parallel with the present case, for the reason that the three-foot strip in question can be, and is, easily identified when the false words are eliminated.

The evidence discloses that the correct legal description of the property originally owned by Matilda McAuley was lot 30 in Whitewood subdivision of the northeast quarter of the southwest quarter of section 18. The deeds introduced in evidence to sustain the complainant's claim describe lot 30 as being in the *northeast quarter* of said section 18 instead of the *northeast quarter of the southwest quarter.* In addition, the deeds, in referring to the easement, describe the land over which the right of easement was created as "the south three feet of the remainder of said lot 30, and the south three feet of the parcel of land of similar width as said lot 30 adjoining said lot 30 on the west and extending beyond the shore of Long Lake, to the west line of said quarter section." There was but one Whitewood subdivision in section 18, and the waters of Long Lake did not touch or border upon the northeast quarter of that section. The waters of the lake did extend,

however, to and over a part of lot 30 in the northeast quarter of the southwest quarter. The purpose of the easement was to afford access to the lake. The rule that the intention of the parties is the test by which to determine the effect of deeds applies to the description of the property as well as to other parts of the instrument. (*Brenneman* v. *Dillon, supra.*) If the descriptive words "northeast quarter" are eliminated from the deeds sufficient language will remain to identify clearly the property in controversy and it can be readily located. (*Bimslager* v. *Bimslager, supra; Brenneman* v. *Dillon, supra; Patterson* v. *McClenathan, supra.*) Furthermore, the public records were examined on behalf of the defendants and the existence of the grant of the easement was ascertained more than a year prior to their acceptance of a deed to tracts 4, 5 and 6. The attorney's testimony conclusively shows that the defendants were not in any respect misled by the descriptions of tracts 1, 2 and 3.

The defendants assert that it was incumbent upon the complainant, as a condition precedent to obtaining the relief sought, to reform the deeds creating the easement, and that owing to her failure to reform them she is precluded from maintaining this action. In *Barton* v. *Mayers,* 183 Ill. 360, cited by the defendants, this court held that a mutual mistake will not be corrected as against an innocent third party without notice, or without knowledge of facts and circumstances sufficient to put him upon inquiry, which, if pursued with diligence, would lead to notice of the mistake. That situation does not obtain in the present case. Moreover, here the bill contained a prayer for general relief, and the decree specifically found that Fannie Murray, by her deed of June 30, 1923, conveyed tract 2 to the complainant and William Brunotte, and that such grantees entered into possession of said tract under said deed on the same day. This was sufficient to establish title, for the purpose of this cause, in the complainant.

The defendants make the further contention that the easement was abandoned prior to June 30, 1923, the date on which the complainant entered into possession of tract 2 under her deed. It is also claimed that the complainant lost her rights by non-user. An easement creates an interest in land and must be founded on a deed or other writing, or on prescription, which presumes a previous grant. (*Traylor* v. *Parkinson,* 355 Ill. 476; *Boland* v. *Walters,* 346 id. 184; *Forbes* v. *Balenseifer,* 74 id. 183.) When it appears by a fair interpretation of the words of a grant that it was the intention of the parties to create or reserve a right, in the nature of a servitude or easement in the property granted, for the benefit of other land owned by the grantor, originally forming, with the land conveyed, one parcel, such right will be deemed appurtenant to the land and binding on that conveyed to the grantee, and the right and burden thus created will pass, respectively, to, and be · binding on, all subsequent grantees of the respective tracts of land. (*Messenger* v. *Ritz,* 345 Ill. 433; *Kuecken* v. *Voltz,* 110 id. 264.) An easement created by a grantor in lands conveyed to his grantee and beneficial to lands retained by the grantor is appurtenant to the lands retained and is binding upon subsequent purchasers of the grantee's land. (*Messenger* v. *Ritz, supra; Goodwillie Co.* v. *Commonwealth Electric Co.* 241 Ill. 42.) The easements created for the use of the owners or occupants of tracts 1, 2 and 3 were created by grant and the deeds were recorded. From the language of the deeds there was certainly no intention of conveying unrestricted title to the three feet in question, but, on the contrary, the south strip was expressly excepted and reserved from the grants and dedicated to a specific purpose, namely, a passageway from the several tracts to Long Lake.

This court has repeatedly held that an easement created by express grant cannot be lost by mere non-user and that such non-user does not constitute an abandonment.

To constitute an abandonment of such an easement there must be, in addition to the non-user, circumstances showing that it was the intention of the dominant owner to abandon the use of the easement. (*Yunkes* v. *Webb*, 339 Ill. 22; *Perry* v. *Wiley*, 285 id. 25; *Hofherr* v. *Mede*, 226 id. 320.) It can only be extinguished by hostile, adverse possession for the full statutory period. (*Perry* v. *Wiley, supra; Swedish Lutheran Church* v. *Jackson*, 229 Ill. 506; *Kuecken* v. *Voltz, supra.*) In *Hofherr* v. *Mede, supra,* this court said: "The possession which is required to constitute a bar to the assertion of a record title to real estate by the holder thereof must include five elements. It must be (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under a claim of title inconsistent with that of the possessor of the record title."

The principal authority invoked by the defendants to sustain the contention with respect to abandonment and non-user is *Clokey* v. *Wabash Railway Co.* 353 Ill. 349. In the case cited we held that non-user by the public of an alleged way for the statutory period of limitations, supplemented by proof that the owner of the premises charged with the easement had done acts inconsistent with and antagonistic to the existence of the easement, created a presumption of its extinguishment. Manifestly, the *Clokey case* cannot avail the defendants for the simple reason that there has been no adverse possession for the statutory period in the present case.

The complainant's grantor could not have abandoned the easement, as such abandonment must be established by non-user under circumstances indicating an intent on the part of the owner of the dominant estate to abandon and must continue for the full statutory period. Such evidence of non-user and intent on the part of Mrs. Murray or the complainant, who acquired the title to tract 2 from her, is wanting. Neither the presence of the fence extending

north and south between tracts 2 and 4, erected in 1918, prior to the creation of the easement, nor the fact that it continued in place, tends to indicate an abandonment of the easement by either the complainant or her grantor. Moreover, in 1925 the complainant removed the portion of the fence between tracts 2 and 4 which extended across the three-foot strip. Such conduct is indicative of an intention to use rather than to abandon the easement. The flower-bed on the complainant's property did not cover all of the three-foot strip, and was obviously not such an obstruction of the easement as would indicate an intention to abandon. Its temporary character is evidenced by its removal. The lattice-work on the defendants' property, which obstructs the easement, was erected by the original owner prior to the creation of the easement. The conduct of the complainant was wholly inconsistent with an intention to abandon the use of the easement.

The next contention of the defendants is, that an oral contract to abandon the easement was fully executed when Miss McAuley, Mrs. Bliss and Mrs. Murray were the sole owners of the easement, thereby conclusively establishing its abandonment. To sustain this contention the defendants rely upon *Dunn* v. *Youmans,* 224 Ill. 34, *City of Chicago* v. *Hogberg,* 217 id. 180, and *Hunt* v. *Sain,* 181 id. 372. The authorities invoked fail to sustain their contention. These three cases involved parol licenses or implied easements. Furthermore, in *Hunt* v. *Sain* the court held that the burden of proof to show abandonment of an easement by clear and unequivocal evidence rests upon the party asserting it. This the defendants wholly failed to do. The easement of passage, light and air over the south three feet of lot 30 to the waters of Long Lake was created by grant and it has never been released of record. If the oral agreement purported to have been made by the three women was made while Mrs. Murray owned tract 2, it will be observed that her action in subsequently granting

the easement to the complainant and her husband is inconsistent with such agreement; if entered into thereafter it was obviously not binding upon the complainant.

The defendants contend further that they took tracts 4, 5 and 6 free from the burden of the easement because it was not in a state of open and notorious, physical, visible and existing condition at the time of the sale. Cases are cited where the easements sought to be enforced were created by implication. They are not applicable to the facts of the present case, where the defendants had notice of the complainant's easement over their property. This contention is without merit.

The remaining contention to be considered is that the complainant is barred by *laches* from asserting her right of easement. *Laches* is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to the adverse party, constitutes a bar in a court of equity. (*Forest Preserve District* v. *Emerson,* 341 Ill. 442; *Thomas* v. *Chapin,* 274 id. 95.) Mere delay in asserting a right does not bar the enforcement of an equitable right unless the statutory period allowed for its assertion has elapsed. (*Yunkes* v. *Webb, supra.*) To avail themselves of the defense of *laches* within the statutory limitation period it was incumbent upon the defendants to show that the complainant's delay in instituting this proceeding was accompanied by some other element rendering it inequitable for her to assert her title. (*Manson* v. *Berkman,* 356 Ill. 20; *Yunkes* v. *Webb, supra; Thomas* v. *Chapin, supra.*) The evidence fails to show that the defendants were in any way prejudiced by the fact that the complainant did not elect to bring her suit to enjoin the obstruction of the easement at an earlier date.

The decree of the circuit court is right, and it is affirmed.

*Decree affirmed.*