(No. 31715.—

Frank W. Kurz, Appellee, *vs.* August W. Blume, Jr., Appellant.

*Opinion filed November 27, 1950.*

384

SCHMIEDESKAMP & NEU, of Quincy, (JOHN T. ROBERTSON, of counsel,) for appellant.

CHARLES E. BINKERT, of Quincy, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Adams County which held a right-of-way easement abandoned and extinguished, confirmed title thereto in appellee, who is the owner of the servient estate, and enjoined appellant, the owner of the dominant estate, from using the right of way or claiming any right therein.

The record shows that in 1867, one Amos Green owned a tract of land described as the north 140 feet of lot 4,

block 2, in the original town, now city, of Quincy. The western boundary of the tract ran for 140 feet along Fourth Street; the northern boundary ran for 99 feet along Broadway Street; while the eastern and southern boundaries were enclosed by other lands. All buildings on the tract were apparently built facing Fourth Street to the west. During 1867, Green sold the north 100 feet of his tract to one Benneson, the deed of conveyance reserving to Green "the right of way over 12 feet wide on the east side of said described tract of land [*i.e.*, the north 100 feet conveyed] for a passageway to 40 feet of ground lying south of the tract hereby conveyed and owned by the party of the first part." The land conveyed to Benneson has passed by *mesne* conveyances to appellee, Frank W. Kurz, who acquired an undivided one-half of the title in 1936, and the remaining half December 3, 1942. The 40-foot lot retained by Green, to which the benefit of the right of way appurtained, is now owned by appellant, August W. Blume, Jr., who purchased it August 7, 1942. None of the deeds in the chain of title to the servient estate from Benneson through appellee made any reference to the right of way, while each and every conveyance of the dominant estate from Green through appellant, expressly purported to convey the right of way. It is settled that a right of way is an easement, (*Tallman* v. *Eastern Illinois and Peoria Railroad Co.* 379 Ill. 441,) and there seems to be no question that the easement in this case was appurtenant to the 40-foot lot and passed with the conveyances of such tract. (*Messenger* v. *Ritz,* 345 Ill. 433.) It is likewise apparent that the purchasers of the servient estate had notice of the easement from the public records of their chain of title, and, thus, took their title subject to the easement. *Yeager* v. *Manning,* 183 Ill. 275.

As the easement exists today it is 9½ feet wide, the other 2½ feet having been taken up by sheds and a fence located at the rear of the servient estate. There is still

ample room, however, for the passage of cars and trucks and no issue has been made over the encroachment. Late in 1942 or early in 1943, shortly after the parties here had acquired title to their respective properties, appellee, who had been advised by an attorney that the right of way was a cloud on his title, offered appellant $100 for a release of any interest the latter might have in the easement. The offer was refused. At the time, however, neither party confessed nor admitted to the rights of the other.

For many years the north and south boundary line between the two properties was a rock retaining wall which was five feet high at the front of the lots and tapered down to a height of eighteen inches at the rear. It was not shown who erected the wall, when it was erected, or its purpose, although there is some suggestion that it was built to keep surface waters from flowing onto appellee's land, which was somewhat lower than appellant's. Until September, 1948, the wall extended across the south end of the right of way, at which time it was torn down by appellant for the width it ran across the right of way. Using the right of way, or alley, as it is most frequently referred to, appellant hauled in material and erected on his property a garage which opened into the alley. He improved the surface of the alley with gravel for its entire length and since December, 1948, has used it as a means of ingress and egress to his garage. Appellee did not learn of this until the following spring when informed by tenants, at which time he put a chain across the north end of the alley and erected a warning sign. After the chain and sign had been torn down several times and appellant persisted in his use, appellee commenced this action seeking a confirmation of title and an injunction against appellant's use of the right of way.

To support his claim for exclusive possession, appellee contends that the right of way or easement was extinguished

and lost to the dominant estate by reason of nonuser and adverse possession in the owners of the servient estate for more than twenty years. Admittedly, the only question presented for review under this point is whether the proof entitles the appellee to the defense of the Statute of Limitations. This court has held that an easement created by express grant, as in the instant case, cannot be lost by mere nonuser, where there is no adverse possession to bar the right, (*Wright* v. *Hendricks,* 388 Ill. 431; *Brunotte* v. *DeWitt,* 360 Ill. 518; *Yunkes* v. *Webb,* 339 Ill. 22; *Perry* v. *Wiley,* 285 Ill. 25,) but a complete nonuser for twenty years or more, with possession in another that is inconsistent with or hostile to the right of such easement, will bar the easement. (*Village of Auburn* v. *Goodwin,* 128 Ill. 57; *Illinois Central Railroad Co.* v. *Houghton,* 126 Ill. 233; *Village of Winnetka* v. *Prouty,* 107 Ill. 218; *City of Peoria* v. *Johnston,* 56 Ill. 45.) Adverse possession for the statutory period may be a bar whether the right of entry be based on a fee-simple title or upon an easement, provided the actual possession of the land is hostile to such title or easement. (*Illinois Central Railroad Co.* v. *Moore,* 160 Ill. 9.) When the bar of the Statute of Limitations has become absolute, and the party entitled to its benefit is in possession under it, it is thereafter available for attacking as well as for defensive purposes. (*McDuffee* v. *Sinnott,* 119 Ill. 449.) In *Hofherr* v. *Mede,* 226 Ill. 320, it is stated: "* * * the possession which is required to constitute a bar to the assertion of a record title to real estate by the holder thereof must include five elements. It must be (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under a claim of title inconsistent with that of the possessor of the record title." In applying this formula for proof of adverse possession, we have held that it cannot be made out by inference or implication, but must be established by evidence that is clear, positive and unequivocal, all presumptions

being in favor of the true owner. *Loverkamp* v. *Loverkamp*, 381 Ill. 467; *Yunkes* v. *Webb*, 339 Ill. 22; *Wilkinson* v. *Watts*, 309 Ill. 607.

The proof offered by appellee to show nonuser and adverse possession consisted of the testimony of Fred Smith who once owned the 40-foot lot owned by appellant. Smith "thought" he bought it in 1916 or 1917, and "thought" that he owned it until 1936, and stated that he had not used the alley during that period because he had been asked not to by a party named Sonnett, who then owned the servient estate. On cross-examination he admitted that he had neither an automobile nor a garage at the time of his occupancy. Agnes Amen testified that she had been a tenant on the dominant estate from 1912 to 1915, and that neither she nor her brother, who owned the property, had ever used the alley. Bertha Miller, a tenant on appellee's property, recounted that she had lived there since 1922 when it was owned by Sonnett, and that during this period she and other tenants on the servient estate used the alley for hauling coal, kindling and ashes. She stated that when she moved there in 1922 there was a gate which shut off the north end of the alley adjacent to Broadway Street. Marie Martin, a tenant who had lived on the servient estate for thirteen years immediately preceding the trial, testified that in that time none of the persons occupying the dominant estate had used the alley until appellant built his garage. Neither she nor Mrs. Amen had any knowledge of a gate or fence across the north end of the alley. Testifying in his own behalf appellee stated that within his recollection, tenants of the servient estate had been using the alley for hauling purposes since 1929. He did not know if the north end of the alley had ever been blocked off, but seemed to recall that he had heard his uncle, Sonnett, talking about it. Evidence introduced by appellant, which we shall not recount, admitted that tenants of the servient estate had used the alley for hauling, but was dia-

metrically opposed to appellee's version in other material respects.

Appellee argues that his evidence establishes a period of nonuser for more than twenty years and such hostile and adverse possession by those who occupied the servient estate as to bar appellant from the benefits of the easement. We are of the opinion that none of the evidence presented is of the clear and positive nature·that is required. Mrs. Amen testified that she lived on the dominant estate from 1912 to 1915 and did not use the easement. Her testimony merely establishes nonuser for that period and says nothing of any adverse use by the owners of the servient estate. Smith's testimony that he "thought" he bought the dominant estate in 1916 or 1917 and "thought" that he owned it until 1936, is subject to the same objection. In addition, it fails to clearly establish that his nonuser covered a full twenty-year period, nor is there positive testimony which made his period of nonuser continuous with that of Mrs. Amen. A stipulation, setting forth information contained in the abstracts of title to both properties, offers no assistance in this regard. Even if it were to be conceded that a continuous period of nonuser has been shown, the evidence fails to establish that the possession and use of the easement by the owners of the servient estate during that period was hostile, actual, visible or exclusive. To constitute a bar to the dominant estate, the possession by the owner of the servient estate must be inconsistent with the right to the easement. The owner of the servient estate has the right to use the land for any purpose he may deem proper so long as such use does not interfere with the proper enjoyment of the easement. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Central Illinois Public Service Co.* 380 Ill. 130; *Dallenbach* v. *Burnham,* 248 Ill. 468.) The use of the easement by the occupants of the servient estate for hauling coal, kindling and ashes, was in noway antagonistic to the right of passage accruing

to the dominant estate and in noway altered or limited the use which could be made of the alley by the original grant. Neither the quality nor the quantity of the proof made here is sufficient to extinguish an easement created by express grant.

Although the trial court's decree found that the easement was abandoned, appellee did not pursue that ground in his pleading or proof, nor does he urge it in this court. To constitute an abandonment of an easement created by express grant there must be, in addition to the nonuser, circumstances showing that it was the intention of the dominant owner to abandon the use of the easement. (*Brunotte* v. *DeWitt*, 360 Ill. 518.) No such intention has been established in this record and it was further error for the trial court to base his decree on this ground.

The final contention made by appellee is that the easement was extinguished by his actual possession under color of title coupled with payment of taxes for more than seven successive years. Any merit to such contention is immediately stifled by our finding that appellee did not have actual possession of the easement. Further, there is a complete failure of proof that the so-called possession was simultaneous with the period for which taxes were paid. The record shows that this was the very period during which appellant was asserting his right to the easement by refusing to sell it, and by actually using it. Thus, even if appellee's contention were tenable under the law, it could not be sustained under the proof in the case.

The easement was not lost, therefore the decree of the circuit court of Adams County is reversed, and the cause remanded, with directions to dissolve the injunction against the appellant and to enter a decree consistent with the finding of this court.

*Reversed and remanded, with directions.*