(No. 34605.—

N. J. SCHAEFER, Appellee, *vs.* M. DAVID BURNSTINE *et al.,* Appellants.

*Opinion filed March 20, 1958—Rehearing denied May 23, 1958.*

REIDY, KATZ, MCANDREWS, DURKEE & TELLEEN, of Rock Island, and BESSE & BESSE, of Sterling, (KENNARD J. BESSE, and ISADORE I. KATZ, of counsel,) for appellants.

BULL, LUDENS & POTTER, of Morrison, and JOHN C. PIGNATELLI, of Sterling, (MASON BULL, and ROBERT H. POTTER, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Plaintiff, N. J. Schaefer, filed an action in the circuit court of Whiteside County, for the issuance of a writ of injunction restraining and enjoining defendants, M. David Burnstine and Elizabeth Burnstine, from obstructing a right of way, ordering defendants to remove a fence which narrows the right of way, and for other relief. Plaintiff purported to be the owner of an easement for ingress and egress to and from his residence over a fee owned by defendants. Defendants counterclaimed for damages for destruction of property. Upon hearing the cause in chancery, the trial judge entered an order directing defendants to remove any and all obstructions of a permanent nature impeding free passage to plaintiff, perpetually enjoined defendants from erecting obstructions of a permanent nature upon the easement, and dismissed the counterclaim. A freehold being involved, defendants bring their appeal directly to this court.

It appears from the evidence that defendants contracted to purchase a two-acre tract, being a part of a 16-acre tract, from Mary Jones. By the contract defendant was to keep the gate closed at the Woodlawn Road entrance to the 16-acre tract. On September 29, 1947, Mary Jones conveyed the two-acre tract to defendants together with a described right of way 40 feet wide for ingress and egress. On October 23, 1947, Mary Jones conveyed a one-acre tract, immediately south of defendants' property, to Albert Woodyatt, together with a right of way over the same 40-foot-wide strip as extended to the one-acre tract, for ingress and egress.

In June of 1948 a fence was erected along approximately the westerly line of the easement strip and extended south from Woodlawn Road to approximately midway along the defendants' property, thence easterly. A gate was installed at the north end of the fence along the westerly side of the strip. A gate was placed across the roadway on the easement strip where the fence turned in an easterly direction. Mrs. Jones employed the fence builder but Burnstine paid him. It is the gate across the roadway, at the midway point along the original Burnstine property line, which is the focal point of this controversy.

Mrs. Jones died in 1948, and in September, 1949, the defendants purchased the remainder of the original 16-acre tract, except the one-acre tract of Woodyatt's and a tract of about 1½ acres along Woodlawn Road in the northeast corner of the tract. They also purchased the fee in the right-of-way strip.

At the time Mrs. Jones sold the tracts to defendants and Woodyatt the premises were leased to one Janssen to March 1, 1950, and defendants leased to him for an additional year. Janssen pastured most of the 16-acre tract and raised hay on the cleared land just north of defendants' house.

In 1952, Woodyatt built his house. Woodyatt fenced the remaining westerly line of the easement, installing a gate near defendants' stable, and fenced a passageway for defendants' stock along the east side of his property. Woodyatt also built a stock-proof fence north from his property to the gate, east of the roadway. The roadway gate was removed, but later replaced by defendants as the horses would not use the stock lane.

In November, 1955, Woodyatt sold his property to the plaintiff who purchased and installed two cattleguards to replace the roadway gate. The guards did not restrain defendants' horses, and Burnstine demanded that the gate be kept closed. In September, 1956, plaintiff's wife informed defendants that they would no longer open and close the gate. Burnstine then padlocked the gate, and plaintiff took it off its hinges. Defendants then roped the hinged side and plaintiff drove his car through it. Defendants then blocked the gateway with a tractor and manure loader, and plaintiff drove through the fence. The plaintiff then instituted this suit.

Defendants appeal to this court from the adverse holding of the circuit court of Whiteside County contending (1) that the grant of right of way for ingress and egress over a strip of land 40 feet in width is subject to the right of the fee owner to use the land for any proper interest so long as such use is not inconsistent with the reasonable enjoyment of the right of way, (2) that they had a right to install a gate to restrain the public from entering and livestock from escaping, and (3) that the right of way over an area is not to be construed as providing a roadway as broad as the area referred to.

Defendants urge that inasmuch as they own the fee interest in the right of way strip, they had the right to use the land for any proper interest, as long as such use is consistent with reasonable enjoyment of the easement by

plaintiff. The defendants thus take the position that they can install any permanent structure upon or across the easement strip they wish, so long as they do not prevent the plaintiff from using a roadway upon the strip for ingress and egress. The trial court directed defendants to remove any permanent obstructions placed upon the right-of-way strip and to refrain from so placing any permanent obstructions. The plaintiff, by the right-of-way grant, had the right of ingress and egress over a described strip 40 feet wide, and that right exists as to all the land within the boundaries and defendants have no right to obstruct any portion of it. (*Rudolph Wurlitzer Co.* v. *State Bank of Chicago,* 290 Ill. 72.) The use of this easement by defendants by permanent obstructions such as gates, posts, hitching posts, and fence is antagonistic to the right of ingress and egress over the right of way and alters or limits its use. (*Kurz* v. *Blume,* 407 Ill. 383.) In time, by adverse user, the defendants might permanently establish a right to so interfere with the right of ingress and egress.

The construction and placing of a gate across this right of way does interfere with the reasonable use of a right of way for ingress and egress to residence property in our modern age. Truly in the defendants' contract to purchase their two-acre tract they agreed to keep the gate at Woodlawn Road closed, to protect the livestock upon the 16-acre tract from straying. No such obligation is found in either deed or grant of right of way. It was the original grantor herself, Mrs. Jones, who removed the gate across the easement, and directed a gate installed in the north end of the fence erected along the westerly side of the easement. The right of way then ceased to be pastured.

Defendants, nevertheless, insist that they have the right to gate the right of way to restrain the public from entering and the livestock from escaping. As authority for their position defendants rely upon three cases, each relating to rights of way for ingress and egress through farm and

pastured lands, wherein it was held reasonable and consistent with the use of the right of way to gate the easement. Each case depended upon the consideration of the great advantage to the owner of the fee and the slight inconvenience to the owner of the right of way. Generally the infrequent use of the right of way was outweighed by protection of the farm land. In one of the cases, *Leesch* v. *Krause,* 393 Ill. 124, the owners of the right of way by prescription had always opened and closed gates, and hence took their easement with that burden.

Defendants rely upon the fact that the cases of *Green* v. *Goff,* 44 Ill. App. 589, and *Truax* v. *Gregory,* 196 Ill. 83, consider what was the condition of the use of the land down through the years. Defendants fail to realize, however, that those cases consider the use during the years that the easement has existed. In the case at hand, the use of the strip for pasture purposes ceased at the time of the grant of right of way or soon thereafter.

The use which defendants wish to make of this right of way, by placing a gate across it, is not a reasonable use, and obviously is of great inconvenience to plaintiff without a corresponding advantage to defendants.

Finally, defendants maintain that the right of way over an area, strip or parcel of ground is not ordinarily to be construed as providing for a way as broad as the ground referred to. The defendants' position is that the right of way over this 40-foot-wide strip means only a right to a roadway winding through the strip and nothing more, since natural obstructions, certain trees, exist upon the strip. This view is diametrically opposite to the rule established in this State. The rule obtaining in this State is that the owner of a right of way for ingress and egress has the right to use the full width of the area or strip having definite boundaries, unhampered by obstructions placed thereon. (*Rudolph Wurlitzer Co.* v. *State Bank of Chicago,* 290 Ill. 72; *The Fair* v. *Evergreen Park Shopping Plaza,* 4 Ill. App.2d

454.) The trees are natural obstructions existing at the time of the grant of the easement and were not placed there by defendants. Hence they differ from permanent obstructions erected by defendants, and bring about no variance of the rule in this State.

The defendants have no right to maintain a gate across this right of way, nor do they have any right to place obstructions of a permanent nature upon the easement. Accordingly, the decree of the circuit court of Whiteside County is affirmed.

*Decree affirmed.*