RUTH K. FLOWER, Plaintiff-Appellant, v. ANDREW VALENTINE *et al.*, Defendants-Appellees.

First District (1st Division)   No. 83—1476

Opinion filed August 26, 1985.

Wilson & McIlvaine, of Chicago (Leonard S. Shifflett, of counsel), for appellant.

Arnstein, Gluck, Lehr, Barron & Milligan, of Chicago (John F. McClure and Arthur L. Klein, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Ruth K. Flower, brought an action to temporarily and permanently enjoin defendants, Andrew and Marjorie Valentine, from entering upon her property, from moving or removing any vegetation from her real estate, and for damages against defendants. The defendants counterclaimed for injunctive relief to prevent plaintiff from interfering with the use of their easement and requiring plaintiff to remove all obstructions from the easement. The trial court enjoined plaintiff from interfering with defendants' use of the easement and required plaintiff to remove certain obstructions from the easement.

On appeal, plaintiff contends that (1) the court erred by ordering plaintiff to remove a barbecue grill and shrubs which were on the easement; (2) that the court erred in granting a directed verdict in favor of defendants; and (3) that the court erred in refusing to hear tes-

timony of an expert witness regarding the possible erosion of plaintiff's property as a result of defendants' actions.

FACTS

The easement was granted in December 1950, in favor of Mr. and Mrs. Frederick Nichols, by Mr. and Mrs. Albert Belshe, defendants' predecessor in title. The Belshes then owned the property subsequently acquired by plaintiff. The grant provides for a perpetual easement and right of way across a strip of land 15 feet in width on the servient estate (plaintiff's property). The grant provides in relevant part:

> "The easement hereby created includes the right of foot travel through and upon said fifteen foot strip and a right to construct and maintain stone, wood, cement or other types of steps on the bluff leading to the beach within the limits of said fifteen foot area.
>
> The cost of building and maintaining and repairing the said steps shall be borne solely by the second parties (the Nichols).
>
> This agreement shall be binding upon and inure to the benefit of the parties hereto, their heirs and assigns and the covenants and agreements hereby created shall constitute covenants and agreements running with the lands owned by the parties hereto and involved therein."

In 1952, plaintiff acquired the servient estate, known as 1085 Sheridan Road in Winnetka. Defendants purchased the dominant estate from the Nichols in 1979. When plaintiff moved to 1085 Sheridan Road, there were certain plantings and improvements located on the easement area, which included hedge bushes and a barbecue grill. In addition, there were some shrubs on the property and some cinder blocks had been placed on the easement to serve as steps. However, from 1953 through 1955, these steps began to break up.

At the time plaintiff moved into her house, Mr. and Mrs. Nichols crossed over a portion of plaintiff's premises as they came and went to the beach from their house situated to the west of the plaintiff's property. Apparently, guests of the Nichols also used the easement. There is a suggestion that plaintiff and her husband did not get along well with the Nichols. Because of this, plaintiff commenced to take steps to enclose the easement area. In 1953, plaintiff placed yard furniture on the easement and the next year she put in a herb garden over a portion of the easement. In 1956, plaintiff planted buckthorn bushes and installed a gate at the point where the easement begins between the Nichols' property and the plaintiff's premises. The gate

was then planted with Clematis on either side. Whether the Clematis vine grew in such a fashion as to seal the gate was in dispute. Plaintiff testified that such vine did enclose the gate and made passage through it impossible. However, Mr. Nichols testified the gate was always open.

Plaintiff owned a large Boxer dog and the Nichols owned a Dalmation dog. One day in 1956, the Boxer attacked the Dalmation as Mrs. Nichols came up the bluff from the beach. Shortly after the altercation between the dogs, Mrs. Nichols and plaintiff had a conversation. According to plaintiff, Mrs. Nichols was very irate about her dog being attacked and about plaintiff's act of planting an herb garden and installing the gate. She allegedly stated, "I will never come again where we are not wanted." Plaintiff stated she never again saw the Nichols enter her property or use the easement area. Plaintiff believed the Nichols used the easement but she never observed them using it. She further testified that guests of the Nichols did not use the easement area thereafter.

Mr. Nichols testified that, until he sold his property to defendants in 1979, he used the easement only when the plaintiffs were not around so as to avoid unpleasant confrontations. Mr. Nichols stated that after 1968, when the plaintiffs dumped debris over the steps which led down to the beach, he never again used the easement all the way down to the beach. Mr. Nichols maintained that he used the remainder of the easement and that his use was not inhibited by the gate which could always be opened.

However, after the altercations between the dogs in 1956, plaintiff observed Mrs. Nichols on the beach and also observed her use a neighbor's old wooden stairway to the beach. Plaintiff also testified that she observed Mrs. Nichols use a set of stairs to the south of plaintiff's premises as well as a public lane to get to the beach.

Plaintiff's husband testified that the dumping of debris and rock occurred in May or June of 1961 as a result of construction of a patio at the home. The debris was dumped on the incline portion of the easement where the remains of the concrete steps were located. Plaintiff's husband testified that this debris was used to help stabilize the incline area, since the area had erosion problems which required continuous planting of ground cover.

When the Nichols put their property up for sale, the real estate listing prominently referred to the easement in question. The deed which the defendants received from the Nichols specifically conveyed that easement to them. Defendant testified that in 1979, when he and his wife purchased the dominant estate from the Nichols, there had

been a history of growth of bushes and thickets which encumbered one from walking down the incline of the easement area and that there were remnants of steps which could not be used. In 1981, defendant and plaintiff's husband had a conversation about the easement in which defendant stated that he and his wife were contemplating building steps down to the beach. In response, plaintiff's husband said that he objected to such action because he felt that any building would cause erosion. In a subsequent conversation initiated by defendant, plaintiff's husband said that he further objected to defendants' construction of steps because of the possibility that the easement had been lost through abandonment and adverse possession. Shortly thereafter, defendant entered upon the easement and proceeded to remove the vegetation on the easement. Plaintiff subsequently filed the present lawsuit seeking to enjoin the defendants from using the easement.

## Opinion

### I

Plaintiff first contends the court erred in enjoining plaintiff from interfering with defendants' use of the easement and specifically the court erred in ordering plaintiff to remove a barbecue grill and shrubs which were on the easement at the time it was granted. (*Ogilby v. Donaldson's Floors, Inc.* (1958), 13 Ill. 2d 305, 148 N.E.2d 758; *Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, 150 N.E.2d 113.) Plaintiff claims that removal of the obstructions would result in little benefit to defendants but would greatly affect her property and therefore equity demands that the obstructions remain in place. (*Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 192 N.E.2d 384.) Moreover, plaintiff claims that because Nichols had the opportunity to clear the area and chose not to do so, the Nichols and their successors are barred by *laches* from now complaining about the obstructions.

Defendants do not dispute that the barbecue grill was in existence at the time the easement was granted. The evidence as to which bushes were in existence at that time was disputed. According to defendants, which obstructions were in existence is irrelevant since there is no rule which permits obstructions to remain in place. Defendants also note that the grant of the easement was specifically made "subject to the conditions and limitations hereinafter set forth." Since no conditions or limitations were specified, defendants assert that it was not the parties' intention to exempt the barbeque grill and the bushes from the easement. Defendants also maintain that plaintiff

has waived the defense of *laches* since it was not raised. (Ill. Rev. Stat. 1981, ch. 110, par. 2—613(d); *Bowman v. Pettersen* (1951), 410 Ill. 519, 102 N.E.2d 787.) Defendants rely on the rule that a party cannot avail himself of a defense not stated in the answer even though it appears in the evidence. Defendants, however, did not object at trial to the presentation of plaintiff's evidence regarding the defense and in fact defendants rebutted the testimony at trial. Consequently, defendants have not been surprised or prejudiced by this variance and plaintiff will not be deemed to have waived consideration of the defense. See *Hurst v. Papierz* (1970), 129 Ill. App. 2d 117, 262 N.E.2d 773; *Bittner v. Wheel Horse Products, Inc.* (1975), 28 Ill. App. 3d 44, 328 N.E.2d 166.

■■ An easement is a right or a privilege in the real estate of another and when exercised in connection with the occupancy of other land, it is said to be appurtenant thereto. (*Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 192 N.E.2d 384.) The right created by such easement will pass respectively to and be binding on all subsequent grantees of the respective tracts of land. (*Brunotte v. DeWitt* (1935), 360 Ill. 518, 196 N.E. 489.) It has been held that an easement created by express grant cannot be lost by mere nonuse and that such nonuse does not constitute an abandonment. To constitute an abandonment of such an easement there must be, in addition to the nonuse, circumstances showing that it was the intention of the dominant owner to abandon the use of the easement. (*Brunotte v. DeWitt* (1935), 360 Ill. 518, 196 N.E. 489.) The determination of whether or not there has been an abandonment is within the discretion of the trial court and such determination will not be reversed on review unless it is against the manifest weight of the evidence. *Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 192 N.E.2d 384.

In the absence of an agreement to the contrary, the owner of the easement has not only the right but the duty to keep the easement in repair while the owner of the servient tenement has no duty to either put or keep the easement in repair. (*Triplett v. Beuckman* (1976), 40 Ill. App. 3d 379, 352 N.E.2d 458.) The owner of the dominant estate is entitled to the necessary use of the easement. Necessary use has been defined as such use as is reasonably necessary for the full enjoyment of the premises. (*Ogilby v. Donaldson's Floors, Inc.* (1958), 13 Ill. 2d 305, 148 N.E.2d 758.) Moreover, although the owner of the dominant estate has the duty to maintain and repair the easement, he cannot make material alterations in the character of the easement, even though it would be more to his convenience to do so, if the alteration places a greater burden upon the servient estate or interferes

with the use and enjoyment of the servient estate. *Triplett v. Beuckman* (1976), 40 Ill. App. 3d 379, 352 N.E.2d 458.

It is well established that the owner of a right of way for ingress and egress has the right to use the full width of the area or strip having definite boundaries unhampered by obstructions placed thereon. (*Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, 150 N.E.2d 113.) However, natural obstructions, such as bushes and trees, which existed at the time of the grant of the easement and were not placed there by the owner of the servient estate have been recognized as an exception to this rule. *Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, 150 N.E.2d 113.

Plaintiff contends that even if the easement in question is valid, the trial court erred in ordering the removal of the barbecue and shrubs which were present on the easement at the time it was granted. Plaintiff maintains that the defendants do not offer any evidence indicating that these obstructions substantially interfered with their use and enjoyment of the easement. Plaintiff further maintains that the removal of such improvements would be costly and would lessen the value of the servient estate.

Defendants respond that the specific wording of the grant does not exclude the barbecue or bushes. The defendants maintain that the court must assume, therefore, that it was the intention of the parties to exclude such items. Although it is true that the barbecue and bushes were placed on the easement by the original owners and were not specifically excluded in the wording of the easement grant, it is our opinion that plaintiff should not be forced to remove them. In *Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, 150 N.E.2d 113, the court held that trees existing on an easement at the time of its granting were natural obstructions. Since they differed from permanent obstructions erected by the owner of the servient estate, the court held that such natural obstructions did not have to be removed.

In the instant case, the bushes are in the same category and obviously differ from permanent obstructions erected by the owner of the servient estate. Therefore, the trial court erred when it ordered plaintiff to remove the bushes. On the other hand, the barbecue is a permanent obstruction erected by the owner of the servient estate. However, this obstruction was erected prior to the granting of the easement. The removal of such a large structure would be very costly to plaintiff and would lessen the value of the servient estate. Also, it is obvious that the Nichols were able to use the easement by merely going around this structure. We find it would be inequitable to force the plaintiff to remove the barbecue. Accordingly, the part of the trial

court's order regarding the bushes and barbecue will be reversed. *Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, 150 N.E.2d 113.

■ Plaintiff next contends that the trial court erred in enjoining her from interfering with defendants' use of the easement. Plaintiff maintains that neither she nor anybody under her direction took any actions which could be construed as interference with the easement. We disagree. Plaintiff herself testified that she and her husband placed numerous obstructions in the easement area, such as tables, chairs, plantings, a gate and debris. Further, when the dominant estate was sold to the defendants, plaintiff's husband stated to Mr. Valentine that he objected to defendants' use of the easement and also to the building of new steps on the easement. Plaintiff's husband also stated to Mr. Valentine that he had consulted an attorney and thought the easement had been lost. It is obvious that all of these actions were designed to interfere with use of the easement. Defendants have established that an express easement was created, and consequently, defendants are entitled to the use of such easement. Plaintiff was therefore properly enjoined from placing such obstructions in the easement area since this conduct was improper.

■ Plaintiff also contends that since defendants did not complain about the improvements on the easement for 30 years, the defendants as the Nichols' successor-in-interest are barred by *laches* from raising such a complaint. Defendants respond that plaintiff cannot raise the defense of *laches* since she failed to raise such defense either in her complaint or in her answer to defendants' counterclaim. Defendants also contend that *laches* is a personal defense in nature attributable only to the Nichols and cannot be attributed to defendants as the Nichols' successor in interest.

A review of the record reveals that plaintiff raised the *laches* defense in her answer to defendants' counterclaim. *Laches* is a defense which is asserted against one who has knowingly slept upon his rights and acquiesced for a great length of time, and its existence depends upon whether under all the circumstances of a particular case, a party is chargeable with want of due diligence and failing to institute proceedings before he did. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341.) In other words, the mere delay will not bar the assertion of the right. There must be in addition, something in the conduct of the complainant to assert his right. (*Ariola v. Nigro* (1959), 16 Ill. 2d 46, 156 N.E.2d 536.) It is only by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done that the defense of *laches* can be considered. (*Ariola v. Nigro* (1959), 16 Ill. 2d

46, 156 N.E.2d 536.) The application of the doctrine of *laches* is within the sound discretion of the trial court, and the decision of the trial court will not be disturbed unless a clear abuse of discretion appears. *Dwyer v. Graham* (1982), 110 Ill. App. 3d 316, 442 N.E.2d 298.

It is true that the Nichols did not complain about the barbecue or bushes on the easement or the fact that plaintiff had installed a gate on the easement for a period of 30 years. However, it is our opinion that plaintiff cannot avail herself of the defense of *laches*. We base this conclusion on the fact that plaintiff cannot show she was prejudiced or injured by the Nichols' failure to assert a complaint. It is true that in reliance on the belief that the Nichols had no easement, plaintiff continued to plant shrubs on the easement. However, plaintiff constructed no substantial construction on the easement. It is our view that the removal of the shrubs will not constitute a serious injury to plaintiff. See *Admiral Builders Corp. v. Robert Hall Village* (1981), 101 Ill. App. 3d 132, 427 N.E.2d 1032.

II

Plaintiff contends that the trial court erred in granting a directed verdict for defendants on plaintiff's injunction claim, at the close of plaintiff's case. At that time, the court made a finding that the easement appurtenant was valid and subsisting. After this finding, defendants proceeded with their evidence. At the close of all the evidence, the trial court entered a final order enjoining plaintiff from interfering with defendants' rights to use the easement.

In support of her contention that the easement was extinguished, plaintiff contends that she took specific steps toward that end. These steps included installing a gate and planting shrubs. Plaintiff further maintains that the Nichols abandoned the easement since they did not use it following an altercation between the parties' two dogs. Plaintiff testified that the Nichols used other avenues to the beach, failed to maintain the steps, and failed to use the easement after the dumping of materials on the steps. Plaintiff argues that these acts indicated that the Nichols abandoned the easement. Plaintiff also maintains that she took over the easement through adverse possession.

The standard for determining whether a directed verdict should be awarded has been outlined as follows:

> "The court must consider all of the evidence, including any favorable to the defendant, and is to pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and the quality of the evidence.

\*\*\* [I]f sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made." *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 155, 407 N.E.2d 43.

Plaintiff's evidence showed that an express written instrument created the easement. As indicated, an easement appurtenant created by an express grant cannot be lost by mere nonuse and such nonuse does not constitute abandonment. To constitute an abandonment of such an easement there must be, in addition to nonuse, circumstances showing that it was the intention of the dominant owner to abandon the use of the easement. (*Brunotte v. DeWitt* (1935), 360 Ill. 518, 196 N.E. 489.) Possession which is required to constitute a bar to the assertion of a record title to real estate by the holder thereof must be (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under a claim of title inconsistent with that of the possessor of the record title. (*Brunotte v. DeWitt* (1935), 360 Ill. 518, 196 N.E. 489.) In applying the formula for proof of adverse possession, a *prima facie* case can be established only by evidence that is clear, positive and unequivocal, with all presumptions being in favor of the true owner. *Kurz v. Blume* (1950), 407 Ill. 383, 95 N.E.2d 338.

It is true that plaintiff took specific steps to cut off the easement in that she installed a gate and planted shrubs. However, we do not believe plaintiff's evidence established that the Nichols abandoned the easement. If viewed in its most favorable light, plaintiff's testimony and evidence only established that plaintiff and her husband did not observe the Nichols use the easement after the altercation between the two dogs. In fact, Nichols testified that he continued to use the easement after that date, but only when plaintiff and her husband were not present in order to avoid unpleasant confrontations. Regarding the gate, it is true the plaintiff's husband testified that vines enclosed the gate so that it could not be opened. However, Mr. Nichols testified specifically that he was able to go through the gate. It is also apparent that there was no agreement entered into by the parties to revoke the express grant of the easement. In fact, plaintiff stated that she believed that the Nichols had in fact used the easement when she was not present. We do not find that plaintiff established by clear and positive evidence that she had taken over the easement through adverse possession. Accordingly, we conclude that the trial court did not err when it determined that plaintiff was not entitled to injunctive relief as a matter of law.

III

Plaintiff next contends that the trial court erred in refusing the expert testimony of Ralph Synnestevedt regarding erosion of the easement as a result of defendants' action in clearing an area of vegetation. After Mr. Synnestevedt was qualified as an expert witness, specific questions regarding his observations and expert opinion concerning erosion as a result of defendants' action were excluded by the court. An offer of proof was made to the effect that, if allowed to testify, Mr. Synnestevedt's testimony would establish that the action of defendants in removing vegetation from the area created a burden to the servient estate, resulting in increased erosion, which could be prevented by the proper installation of steps. Mr. Synnestevedt would further testify that if the defendants' action were allowed to continue without either reseeding the area or putting in proper steps, erosion would lead to damage to the easement area and would threaten improvements belonging to plaintiff outside of the easement area.

■■ ■ Defendants maintain that the vegetation on the easement constitutes a private nuisance. They argue that an owner of an easement has the right to remove a private nuisance by abatement and can do this without order of court. However, as we indicated above, the owner of the dominant estate has the duty to maintain the easement. Although it is true that the owner of an easement has the right to remove a private nuisance by abatement, that owner cannot take action which injures the easement area or other property off of the easement area. We are of the opinion that Mr. Synnestevedt would have properly offered testimony that the defendants' action in removing vegetation from the easement area threatened the property and improvements of plaintiff located off the easement area. (See *Sell v. Finke* (1920), 295 Ill. 470, 129 N.E. 90.) It is evident that the plaintiff was not obligated under the law to wait until the easement area or property off of the easement was damaged or destroyed before she brought an action to enjoin the actions of defendants. The expert witness' testimony was directed at the issue of whether defendants' action in clearing the easement area of vegetation disturbed the servient estate to the detriment of plaintiff and her other property. The specific question is whether or not erosion would occur because of the action of defendants. Therefore, we find that the trial court erred when it prohibited the expert testimony.

In summary, we affirm that part of the judgment order which holds there was an express easement in favor of defendants and against plaintiff, and enjoins interference by plaintiff with the use and enjoyment of the easement. We reverse and vacate that part of the

judgment order directing plaintiff to remove from the easement all obstructions thereon and remand that portion of this cause for a rehearing in accordance with the views expressed herein.

Affirmed in part; reversed in part; remanded.

BUCKLEY, P.J., and O'CONNOR, J., concur.