(No. 34610.—

RUTH T. OGILBY *et al.*, Appellees, *vs.* DONALDSON'S FLOORS, INC., *et al.*, Appellees.

*Opinion filed March 20, 1958.*

DOWNEY, LAYNG AND ANDERSON, of Rockford, for appellants.

ANDREWS AND PETERSON, of Rockford, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The circuit court of Winnebago County enjoined the defendants, legal and equitable owners of lots impressed with an easement, from obstructing a private alleyway, and ordered the removal of obstructions therefrom. The appeal is directed to this court since a freehold is involved.

The alleyway in question is the southerly 20.15 feet of a certain lot 5, in the city of Rockford. The defendants are the owners of a tract consisting of lots 3, 4 and said 5 (numbered from north to south.) The corporate plaintiff is the owner of lots 1 and 2 in another subdivision, lot 1 of which lies immediately south of and contiguous to the south line of the alleyway. Each of the lots extends from Main to Wyman streets.

While it appears that the alleyway was in existence prior to 1942, the parties agree that the easement rights claimed were created in that year, although not made a matter of public record until 1949. A deed dated August 8, 1949, conveying lots 3, 4 and 5 related therein that it was made pursuant to the provisions of an agreement for deed dated July 1, 1942. The easement reserved in such deed reads:

"Reserving also a private right-of-way for the maintenance of the present alleyway from South Main Street to Wyman Street of the Southerly 20.15 feet in width of said lot 5, said right-of-way

to be maintained by and for the mutual benefit of contiguous properties."

In 1955 plaintiff leased the north 34 feet of lot 1, except the east 25.5 feet thereof, to Ipsen Industries, Inc., including the right to use the alleyway. Ipsen converted the tract into a private parking lot for the use of its employees and it has since been used for that purpose.

The Arnolds are the equitable owners of lot 5 and the southerly part of lot 4. The south wall of their building extends along and abuts on the north line of the alleyway for its entire length, except for a loading dock and a chimney which extend 4 and 2 feet, respectively, south into the alleyway. Subterranean fuel oil tanks are located on the 20-foot strip with caps at ground level and are used for storage of fuel oil for heating the Arnolds' building.

The defendants and their tenants, from time to time, parked cars and trucks in the alleyway and placed gas barrels across the east end of the alleyway. They sometimes parked a truck over their underground tanks. The defendants' acts made use of the parking lot difficult, and this was not remedied when complaint was made. Defendant, Thomas A. Arnold, countered with a complaint that cars on the lot protruded into the alleyway. Ipsen then caused its employees' vehicles to be parked wholly within the lot.

Finally, Arnold installed along the entire length of the south side of the alleyway (19 feet south of his building) steel posts at intervals of 29 feet and strung steel cables between the posts. This suit followed. The cable was voluntarily removed upon the issuance of a temporary injunction, but nothing was done to alleviate other conditions.

The defendants do not argue the merits of the question of increased use of the easement by the dominant tenement in opening a private parking lot, thus, that question is not before us. Furthermore, they concede that the easement in question was created in 1942. It is therefore unnecessary

to inquire as to the use of the strip prior to that time. Their first contention, in essence, is that for a period of approximately 17 years the owners of the servient tenement had been committing these acts without complaint, and it should be inferred that their rights, long enjoyed and recognized, stemmed from the original intent of the parties. Secondarily, defendants argue that the sweeping language of the court's order imposes an additional burden by depriving them of parking privileges needed for and useful to their business.

Defendants are vague with respect to the legal effect to be given their use of the easement for a number of years without complaint. Abandonment is unavailing since there is no proof of it. It is true that prior to 1955 when a building formerly occupying the present parking lot burned, the alleyway was used largely for pedestrian traffic, but it nevertheless has always been used and never abandoned. No authority is cited to support a theory that the rights of the dominant estate, created by an express reservation, can be diminished by unauthorized use by the owner of the subservient estate.

At the outset we think it clear that this is a proper case for injunctive relief. At least some, if not all, of defendants' act were more than technical, inconsequential wrongs. (See *Haack* v. *Lindsay Light and Chemical Co.*, 393 Ill. 367.) For example, the steel posts placed in the alleyway constitute a continuing hazard. In addition, the same number of vehicles cannot be parked on the lot while the posts stand, they make it more difficult to get in and out of the lot, and plaintiffs stand to lose a tenant at the expiration of the Ipsen lease.

The only question for determination is whether the trial court's order placed a burden upon the defendants beyond that fixed by the easement reserved. The easement created in 1942, specifically set out in the 1949 deed, was for the mutual benefit of the contiguous properties, all of which

were then owned by the creator of the easement. The abutting owners were entitled to the right to the quiet enjoyment of necessary use of the alleyway. Necessary use has been defined as such use as is reasonably necessary to the full enjoyment of the premises. (*Diller* v. *St. Louis Springfield and Peoria Railroad,* 304 Ill. 373.) The purpose of the easement is apparent. It was for the use of the abutting owners as a private alleyway to enable them to get to and from their premises by means of either Main Street or Wyman Street.

Turning to the court's order, it first directs generally the removal of "all obstructions" which the defendants have placed upon the right of way and then specifically orders the removal of the steel posts. Under this portion of the order the posts must be removed, as we have heretofore observed, and the order properly applies to the barrels set up at the east end of the alleyway. The barrels effectively prevented plaintiffs and their tenants from using the Wyman Street end of the alleyway in violation of their right to do so. On the other hand, as we interpret the order, the physical encroachments consisting of the protruding loading dock and chimney, and the underground fuel tanks were not enjoined. These encroachments existed at the time of reserving the easement and must have been recognized by the corporation creating it, since it owned all of the abutting property at the time. It cannot be presumed that the creator intended that parts of the building being sold should be torn down. In any event, the point is moot since counsel for plaintiffs do not contend for removal of these physical obstructions.

The second paragraph of the order restricts parking of motor vehicles except for the purpose of loading and unloading, with the proviso "that in any event, that there shall still be access for ingress and egress to the said plaintiffs (naming them), their agents, their tenants and those having business with said tenants while said loading and

unloading is being conducted and that said motor vehicles shall be immediately loaded or unloaded and removed as soon as this operation is completed." This portion of the order is criticized by the defendants since it not only prohibits the parking of trucks across the east end of the alley and over the underground fuel tanks, but prevents their parking in the alley generally.

The language of the reservation created an unrestricted easement in plaintiffs, as owners of the dominant tenement for use of the strip as a private alleyway. Such unrestricted reservation carried all rights which are incident or necessary to the reasonable and proper enjoyment of the easement. The defendants on the other hand, as owners of the servient estate, may use their property for any purpose not inconsistent with such reasonable enjoyment. No hard-and-fast rule can be stated as to when the use made by the owner of the servient estate is a reasonable use as distinguished from an unreasonable use. It is a question of fact to be determined from the facts and conditions prevailing.

The record discloses that the subject alleyway bears considerable traffic by the parties. Upward of 20 cars of plaintiffs' tenants use it to reach their parking lot. The defendants drive into it with trucks to load and unload merchandise at their dock, they drive their cars into the alleyway to enter the rear of their building and cause tank trucks to enter for the purpose of unloading fuel oil. It is possible that the occasional parking of a truck or car by defendants, if done carefully, would not seriously interfere with plaintiffs' use of the property. It is apparent, however, that if parking is generally permitted, it is bound to cause congestion and interference. If a truck were parked parallel to the building at the loading dock, there would be practically no room for the safe passage of a car. The legal limit on truck width is 8 feet, without considering 6-inch mirror protrusion allowable on each side. When there is

added 4 feet for the loading dock, a maximum of 8 feet is left for the passage of cars approximately 6½ feet in width. The parking of a truck or car, even though reasonably close to the wall at places other than the dock, would normally occupy from 8 to 10 feet and thereby leave very little room for maneuvering on and off the parking lot. This would be notably true when several vehicles were moving at the same time. It seems obvious that the purpose of the easement was for ingress and egress and that parking in the alleyway is an infringement.

We are of the opinion that use of the alleyway as a parking place constitutes interference with plaintiffs' enjoyment of their easement; and that the restriction against obstruction during loading and unloading and the requirement of removal thereafter of motor vehicles were justified.

The decree of the circuit court of Winnebago County is affirmed.

*Decree affirmed.*