ERDAY'S CLOTHIERS, INC., Plaintiff-Appellant, v. GUS SPENTZOS, Indiv. and d/b/a Geneva Family Restaurant, *et al.*, Defendants-Appellees.

Second District   No. 2—91—0738

Opinion filed May 6, 1992.

Wendell W. Clancy and Maureen A. Hill, both of Clancy & Krippner, of St. Charles, for appellant.

Ralph E. Lowe, of Lowe & Steinmetz, Ltd., of Aurora, for appellees.

JUSTICE GEIGER delivered the opinion the court:

The plaintiff, Erday's Clothiers, filed suit seeking relief from the defendant, Gus Spentzos, individually and doing business as the Geneva Family Restaurant. The plaintiff sought no relief from the other named defendants, who were defaulted. We therefore hereafter refer to Gus Spentzos as the defendant. According to the complaint, the defendant was violating the plaintiff's easement for ingress and egress across certain property by placing a restaurant garbage dumpster and parking cars on the easement. The trial court ruled against the plaintiff, holding that (1) the plaintiff's suit was barred by *laches*; and (2) the defendant's use of the easement was reasonable and therefore the plaintiff had no right to relief. The trial court also dismissed defendant's counterclaim. The defendant has not appealed that ruling, and we will therefore not address the counterclaim.

On appeal, the plaintiff argues (1) that the trial court erred in holding that the defendant had the right to place the dumpster on the property; and (2) that the trial court erred in holding that the plaintiff's suit was barred by *laches*.

This suit involves two commercial buildings in Geneva. Both front on State Street; indeed, they are neighbors. The plaintiff's building is L-shaped; one part goes north-south along Third Street; the other part goes east-west from Third Street all the way to an alley. The defendant's building, the Geneva Family Restaurant, is built on property contiguous and immediately west of the north-south leg of the plaintiff's building. The restaurant is rectangular. The defendant is the beneficial owner of the property on which the restaurant stands.

The restaurant building does not extend all the way back to the east-west section of the plaintiff's building. Rather, there is a strip of land about 15 feet wide between the buildings. The trial court held, and the parties now agree, that by grant the plaintiff has an easement for purposes of ingress and egress along the northerly 10.24 feet of this area. Part of the western wall of the north-south leg of the plaintiff's building contains a doorway leading to a steel staircase that leads to a second level of the property. The trial court found (and the parties do not dispute) that to go from the alley on the far west to this doorway, one would have to cross over the area subject to the plaintiff's easement.

The defendant, Gus Spentzos, holds the beneficial interest in the property that contains the restaurant and easement. The parcel is officially known as 305 West State Street. Spentzos purchased the restaurant business from Bernard Cryer in 1985 and the beneficial interest in the property itself in 1987. Cryer had operated the property as a restaurant since 1948, when he rented the building.

Both the plaintiff's property and the defendant's property originally belonged to Minnie Johnson. In 1956, Cryer and a partner purchased 305 West State Street. Under the contract to purchase, the buyers agreed to permit "an easement over the property to be purchased by them hereunder for entrance and exit to the building" that the plaintiff purchased in 1965. By a 1965 co-executors' grant of easement, the executors of the estate of Minnie Johnson granted the plaintiff an easement for purposes of ingress and egress across the 10.24-foot-wide area at issue here.

On June 29, 1990, the plaintiff filed its "Complaint for Declaratory Judgment" against the defendant. Also named as defendants were De Kalb Bank & Trust, which actually owned 305 West State Street as land trustee, and Carol and William Gates, who, the complaint alleged, held fee simple title to the property. The complaint sought no relief from the bank or the Gateses, and these defendants were defaulted early in the litigation.

The complaint alleged the following facts. The plaintiff had an easement for ingress and egress across the property (as described above). The purpose of the easement was to allow the plaintiff access to the public alley to the west. The defendant had violated the easement by (1) permitting his employees to park their vehicles on the easement; and (2) placing a dumpster or dumpsters physically on the easement. These actions interfered materially with the plaintiff's use of the easement. The plaintiff had asked Spentzos many times to remove the dumpster and to clear the easement of automobiles, but the defendant had consistently refused to do so.

The complaint prayed for (1) a declaration of the rights of all the parties to the action; (2) an order that the defendant be required to remove the dumpster from the easement and that the defendant be enjoined from parking vehicles on the easement; and (3) other proper equitable relief.

At trial, the plaintiff called Victor Erday, Jr., president of Erday's Clothiers. Erday explained that the company held title to the building, which was partly a one-story structure and partly a two-story structure. Since about 1984, his son, Victor Erday III, had assumed the day-to-day operation of the business.

Erday testified that when Bernard Cryer ran the restaurant, the restaurant and its garbage containers did not extend onto the easement. On several occasions Cryer came to Erday, explaining that he wanted to extend the restaurant back to the easement line and to put a garbage container on the easement. After there was a fire at the restaurant in 1974, Cryer built his restaurant extension. Cryer then asked Erday to allow Cryer to put a dumpster on the easement. Reluctantly, Erday orally agreed that Cryer could do so. The dumpster Cryer installed was on wheels.

Erday testified that on several occasions deliveries to his store would be made across the easement through the doorway and up the steel steps to a second-floor room. When these deliveries were made, Erday would ask Cryer to "move the dumpster because we got a truck coming tomorrow." Cryer would then comply by moving the dumpster to the side of the easement so that the trucks could "get in as close as possible." Erday never asked Cryer to move the dumpster permanently.

According to Erday, the dumpster currently on the easement differed from Cryer's. The defendant's dumpster was "bigger and had no wheels." Erday did not recall when the new dumpster appeared. Erday spoke with the defendant and the defendant's wife a few times about the dumpster, asking them to keep the property clean. Erday

never asked the defendant to remove the dumpster from the easement. Erday testified that he "believe[d] he asked the defendant to move the dumpster if there was to be a 'box delivery.' "

Erday explained that the door and steel stairway had been added to the plaintiff's building as part of a remodeling project in 1973. At first, the plaintiff took some box deliveries, but not material deliveries, through the door and up the steel stairs. However, about two or three years before the lawsuit, the plaintiff stopped using the entrance for deliveries. The reason was that delivery people kept complaining about grease and dirt in the easement area. Erday admitted that this area had been greasy and slippery even before the defendant put in his new dumpster. According to Erday, this grease came from the restaurant's exhaust fans. The current method of taking deliveries through a door at the far west end of the Erday property was less convenient for delivery people than using the steel stairs.

Erday admitted that if the plaintiff ever did take deliveries through the doorway, "it didn't amount to anything *** not basically deliveries for the store." The store now gets all of its deliveries at the rear of the building on Lot 9, which is bordered by an alley east of the property.

The stairway and steel door have served primarily as a fire escape. The apartments accessible by the steel door may also be reached from Third Street on the east.

On cross-examination, the defendant's attorney asked Erday if the presence of the dumpster interfered with access to and egress from the plaintiff's building. Erday replied, "[i]t doesn't personally bother me," but that there could be a problem if a fire engine needed to come in. This, however, was not Erday's primary concern; his primary concern was with odors from the dumpster. When again asked if "the presence of the dumpster interferes with access and egress to your building," Erday replied, "[n]ot really, outside of entryway for [a] fire truck or anything of that nature."

Erday stated that he would frequently ask Bernard Cryer to stop parking cars on the easement. His requests had limited success. Erday admitted that since the lawsuit began, the dumpster lid had been closed much more regularly than before and there were "less [sic] parking problems in there."

Although Erday testified that the defendant's dumpster was the only one on the easement, he admitted that a photograph taken recently by his son, Victor Erday III, depicted two dumpsters on the premises.

Bernard Cryer, testifying out of order for the defendant, stated that the restaurant fire occurred in 1974. After the fire, Cryer extended the restaurant 17 feet back (that is, to the north). In 1974 Cryer placed a dumpster against the south wall of the east-west leg of the plaintiff's property. He did not recall at trial whether he and Erday had discussed the subject of the dumpster when they talked about Cryer's plan to expand the restaurant. However, he recalled that the two had "[no] problem with it." None of the Erdays ever objected to Cryer's having the dumpster on the easement. As far as Cryer could recall, the only time that the plaintiff's representatives asked Cryer to wheel his dumpster out of the way to accommodate deliveries to the plaintiff's store was at "Christmastime [when] they got Christmas boxes." Cryer could not recall any deliveries being made through the steel door while he was occupying 305 West State Street. He did not recall the doorway leading to the steel stairway (or stairway itself) being used for deliveries.

Cryer testified that when he conveyed his beneficial interest in the property to the defendant, he told the defendant about the plaintiff's easement.

Victor Erday III testified for the plaintiff. He stated that the dumpster now on the easement was much larger than the one used by Cryer; also, unlike Cryer's dumpster, the defendant's dumpster was not movable. Erday III testified that the last time deliveries were made to the second floor of the plaintiff's building (that is, across the easement and up the steel stairs) was in 1989. In apparent contrast to his father's testimony, Erday III stated that this mode of delivery was discontinued because the defendant's dumpster was in the way. He admitted that when the plaintiff was using the steel staircase to handle deliveries, such deliveries took place about twice a year.

Erday III testified that in 1988 or 1989 he started to notice new and strong odors coming through the walls of plaintiff's building from the dumpster. The odors were stronger than anything before and actually caused some customers to leave the plaintiff's store. He also testified that, up until the time he contacted the plaintiff's attorney, employees of the defendant would regularly park their cars on the easement. Erday III took photographs, which were admitted into evidence, depicting these parked cars.

Erday III admitted that he had never personally met the defendant and had never asked the defendant to move the dumpster or the parked cars from the easement. However, in the summer of 1989, he instructed the plaintiff's attorney to tell the defendant about the various problems with the defendant's use of the easement. During the

four to six months before the trial, the defendant and his employees had stopped parking any cars on the easement. Also, since the filing of the lawsuit, the defendant now kept the lid on the dumpster closed at all times.

The plaintiff called the defendant, Gus Spentzos, as an adverse witness. Spentzos denied that Cryer made him aware of the easement when he bought 305 West State Street in 1987. However, Cryer did tell the defendant that the latter could extend the restaurant another five feet. The defendant was represented by counsel when he bought the property. Also, when the defendant bought the building immediately to the west of the restaurant, his lawyer told him about the 10-foot-wide easement.

The defendant admitted that the photographs introduced into evidence proved that he and some family members occasionally parked their cars on the easement. He denied that his employees parked their cars on the easement. When the plaintiff's attorney visited him three times in 1989, the attorney told the defendant to move the dumpster and to stop restaurant employees from parking on the easement. According to Spentzos, this was the first time that anyone had complained to him about the dumpster.

Pamela Hoehn, office manager of Westowns Disposal, testified that in 1984 that company began furnishing the restaurant with garbage disposal services, including a "four-yard" wheeled dumpster. On January 1, 1987, the company replaced this dumpster with a larger "six-yard" container without wheels.

The defendant testified he bought the restaurant business in 1985 and the building itself in 1987. He admitted that his attorney told him about the easement at the time the defendant purchased the property. The attorney also told the defendant that the latter could extend the restaurant an additional five feet, after which there was a 10-foot easement "for everybody."

Spentzos testified that in all the time he had owned and operated the restaurant, no one except the plaintiff's lawyer had objected to the presence of a restaurant dumpster on the easement. No one had asked him to move the dumpster so that the plaintiff could accept a delivery. The defendant admitted that a new dumpster replaced the old one at some point, but said that he was not notified and did not pay attention "because to me the dumpsters look all the same." He admitted that if Westowns offered him a smaller dumpster, he would refuse, because a dumpster the size of the present one was necessary to handle all of the restaurant's garbage. The defendant stated that a dumpster is necessary to operate a restaurant. Had he known there

would be a problem with keeping a dumpster, he would not have bought the restaurant.

At the close of the testimony, the defendant conceded that the existence of the plaintiff's easement was not in dispute.

The trial judge found that the plaintiff possessed, by grant, a very general easement for ingress and egress. The court, however, denied the plaintiff relief, both on the ground of *laches* (as the defendant had argued in his trial brief) and on the basis that the defendant's use of the dumpster was a reasonable use of the easement by the servient tenant. The trial judge also concluded that because the plaintiff's own witness conceded that no cars had been parked on the easement for four to six months, that aspect of the controversy was moot.

In explaining his decision orally, the trial judge took note that there had been a dumpster on the easement since 1974, that odors of some magnitude must have been emitted therefrom since that time, and that the plaintiff was therefore guilty of *laches* in enforcing a right that it "never had in the first place because the presence of a dumpster on one's own property is a reasonable exercise attendant [to the] ownership of property."

In its written judgment order, the court reiterated these findings. The court added the factual finding that the steel staircase leading to the second floor of the plaintiff's building was used in the past to accept deliveries of gift boxes but had not been used for any purpose for several years. The doorway had not been used for deliveries and was apparently installed as an emergency exit.

The plaintiff appeals, arguing (1) that the trial court erred in applying *laches* to the plaintiff's complaint; and (2) that the trial court erred in finding that the defendant's placement of the nonwheeled dumpster on the easement was a reasonable use of the easement by the servient estate.

■ We first address the plaintiff's argument that the trial court erred in applying the doctrine of *laches*. *Laches* is an equitable doctrine which bars an action if, because of the plaintiff's unreasonable delay in bringing suit, the defendant is misled or prejudiced or takes a course of action that he or she should not have otherwise taken. (*Streams Condominium No. 3 Association v. Bosgraf* (1991), 219 Ill. App. 3d 1010, 1016.) Mere delay in bringing suit is not enough to establish *laches*; the defendant must show prejudice or hardship from the delay, *i.e.*, the delay induced him to change his position adversely. (*Schons v. Monarch Insurance Co.* (1991), 214 Ill. App. 3d 601, 609.) A trial court's application of the doctrine of *laches* will not be re-

versed unless the trial court abused its discretion. *Flower v. Valentine* (1985), 135 Ill. App. 3d 1034, 1042.

The trial court reasoned that since there had been a dumpster on the easement since 1974 with the plaintiff's oral permission, and since the plaintiff waited until 1990 to file suit, the plaintiff was guilty of *laches.* However, the court did not find that the defendant detrimentally relied on the plaintiff's inaction.

■ It is true that the plaintiff did not complain about the large dumpster on the easement for 15 years. However, the defendant cannot avail himself of the defense of *laches.* We base this conclusion on the fact that the defendant did not show that he was prejudiced or injured by the plaintiff's failure to assert a complaint. (See *Schons,* 214 Ill. App. 3d at 609.) It is our view that the removal of the large dumpster and its replacement with a smaller movable dumpster or dumpsters will not constitute a serious injury to the defendant. See *Flower v. Valentine* (1985), 135 Ill. App. 3d 1034, 1042.

Having found that the doctrine of *laches* does not prevent the plaintiff's cause of action, we now address the plaintiff's next argument, that the presence of the dumpster on the easement constitutes unreasonable interference with the plaintiff's easement.

■ As the owner of the dominant estate, the plaintiff was entitled to the necessary use of the easement, *i.e.,* such use as is reasonably necessary for the full enjoyment of the premises. (*Flower,* 135 Ill. App. 3d at 1039.) Strictly speaking, the defendant, as owner of the servient estate, had no right to obstruct any portion of the generally described easement. (*Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, 468.) However, our courts have recognized that the owner of the servient estate is entitled to the reasonable use of his property. (*Ogilby v. Donaldson's Floors, Inc.* (1958), 13 Ill. 2d 305, 310; *Professional Executive Center v. La Salle National Bank* (1991), 211 Ill. App. 3d 368, 379.) As the court stated in *Ogilby:*

> "The defendants ***, as owners of the servient estate, may use their property for any purpose not inconsistent with such reasonable enjoyment [by the easement owner]. No hard-and-fast rule can be stated as to when the use made by the owner of the servient estate is a reasonable use as distinguished from an unreasonable use. It is a question of fact to be determined from the facts and conditions prevailing." *Ogilby,* 13 Ill. 2d at 310.

The parties disagree over the standard of review applicable to this case. The plaintiff claims that the facts in this case are undisputed and that the trial court's ruling is reviewable *de novo.* The defendant argues that there were factual discrepancies in the testimony and that

because the question of reasonable use is one of fact, the trial court's finding of reasonable use should not be overturned unless it is against the manifest weight of the evidence. We believe that there are discrepancies in the testimony and that the question of reasonable use is one of fact (as the above-cited cases state). Therefore, we will apply the manifest weight of the evidence standard for review.

We agree with the trial court that the defendants, as owners of the servient estate, may use their property for any purpose not inconsistent with the reasonable enjoyment of the easement owner. (See *Ogilby*, 13 Ill. 2d at 310.) However, the trial court erred in solely using the current use of the easement by the dominant owner to determine what "inconsistent" use is. The court noted that currently the plaintiffs are making minimal use of the easements for delivery. The court reasoned that since the only current use of the easement area by the plaintiff was as an emergency exit, the defendant's use was not inconsistent with the plaintiff's use.

By the trial court's reasoning, a dominant easement owner could lose substantial rights of ingress and egress by mere nonuse. However, this is inconsistent with the long-standing rule that an easement cannot be lost by mere nonuse. (*Pacemaker Food Stores, Inc. v. Seventh Mont Corp.* (1983), 117 Ill. App. 3d 636, 645; *Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 390.) To constitute abandonment, the dominant owner must not only abandon the easement but also have the intent to abandon the easement. (See *Flower*, 135 Ill. App. 3d at 1039.) While the court should look to the dominant estate's use of and the "conditions prevailing" (*Ogilby*, 13 Ill. 2d at 310) to determine whether the servient estate's use of the property is inconsistent with the reasonable enjoyment of the easement owner, nonuse cannot be used to vitiate the clear intent and permanence that is necessarily inherent in easements for ingress and egress. The rights of the owner of the easement are paramount (*Schnuck Markets, Inc. v. Soffer* (1991), 213 Ill. App. 3d 957, 974), and the law is jealous of the claim of an easement. *Delgado v. Wilson* (1989), 178 Ill. App. 3d 634, 640.

Examples of reasonable use by a servient estate are the temporary or occasional blockage of the easement area (see *Ogilby*, 13 Ill. 2d at 310-11), or obstructions that predate the creation of an easement. (See *Flower*, 135 Ill. App. 3d at 1040.) But, the permanent placement of obstructions in an area that significantly lessens the ingress and egress rights of the dominant owner is not reasonable and is therefore an inconsistent use with the right of reasonable enjoyment. See *Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, 468-69 (emphasizing that permanent obstruction by gates and posts was not reasonable use).

■ The plaintiff used the easement area for deliveries up until 1989. There was also testimony that it was no longer being used for deliveries because the dumpster prevents delivery truck access. Furthermore, as an easement that runs with the land, the ingress and egress could be considerably important in the resale value of the plaintiff's property to a business that would need such access. For the above reasons, we find the defendant's use of a large, immobile dumpster to be unreasonable interference. See *Flower*, 135 Ill. App. 3d at 1040.

■ The plaintiff also argues that the parking of vehicles on the easement and the odors emanating from the dumpster additionally constitute unreasonable interferences with the plaintiff's easement.

Noting that the plaintiff's own witness testified that the defendant had recently stopped parking cars on the easement, the trial court held the parking complaint to be a moot issue. A moot issue is one which existed but which, because of the happening of certain events, has ceased to exist. (*People v. Meece* (1987), 162 Ill. App. 3d 658, 660.) However, an exception to the mootness doctrine exists where the issue is likely to recur and because of the short duration of the action involved, it would ordinarily be terminated before the question could be resolved by a court. See *Meece*, 162 Ill. App. 3d at 660.

This exception applies in this case where the complained parking problem was stopped as of the initiation of the lawsuit, but would be likely to recur if the respective rights of the parties were not determined by the court. Therefore, we find that the plaintiff is entitled to injunctive relief to prevent the defendant from blocking the easement with parked vehicles.

■ In addressing the odors that apparently drove the customers from the plaintiff's store, the complaint did not sound in nuisance, and the plaintiff has made no effort to connect up any odor problem with its rights under the easement. We therefore affirm the court on this issue and deny any relief from this effluvial problem.

The judgment of the circuit court of Kane County is reversed, and the cause is remanded with instructions to enjoin the defendant from parking on the easement or placing any dumpster or other obstruction which significantly impedes the ingress and egress rights of the plaintiff.

Reversed and remanded with directions.

UNVERZAGT and BOWMAN, JJ., concur.