2022 IL App (1st) 211057-U

FIFTH DIVISION
March 25, 2022

No. 1-21-1057

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| CHICAGO TITLE LAND TRUST COMPANY, AS SUCCESSOR TRUSTEE TO AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO, U/T/A DATED FEBRUARY 24, 1989, A/K/A TRUST NO. 107716-08, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 CH 12823 |
| | ) | |
| DAVID LARSEN, | ) | |
| | ) | Honorable Sophia H. Hall, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

*Held*: We affirm the circuit court's grant of plaintiff's motion for summary judgment and entry of a permanent injunction because the agreed facts demonstrate defendant trespassed upon plaintiff's easement.

¶ 1    Defendant David Larsen appeals from the circuit court's grant of summary judgment in favor of plaintiff Chicago Title Land Trust Company, as successor trustee to American National

Bank & Trust Company of Chicago, U/T/A dated February 24, 1989, A/K/A Trust No. 107716-08's ("the Trust"). In its summary judgment order, the circuit court found that defendant trespassed upon the Trust's easement, and entered a permanent injunction against interference with that easement. We affirm.

¶ 2                                     BACKGROUND

¶ 3     This case concerns five row houses, hereinafter referred to as Lots 1 through 5, located on the 2200 block of North Cleveland Avenue in Chicago. The houses run north to south, with Lot 1 the furthest south, bordering Grant Place to the south, and Lots 2 through 5 ascending north, with Lot 5 bordering an east-west public alley to the north. The Trust owns Lot 1, which it purchased in 1989, for its beneficiaries John Douglas Van Arsdale and Steven Eckles. Larsen owns Lot 2, which he purchased in November 2016.

¶ 4     Plaintiff attached a site plan to its motion for summary judgment, which we include here for reference:



¶ 5     This is not the first time this court has considered a dispute regarding the easement covering the five properties. A few years ago, this court explained the history and dimensions of

the subject property and the owners' easement rights in *Gupta v. Erwin*, 2011 IL App (1st) 103494-U. The record adduced in this new case builds on the *Gupta* court's analysis, so we begin with a recital of that court's essential findings, as follows:

"The five houses run in a north-south direction and front west onto Cleveland Avenue. *** The row houses cover the entire width of their respective lots and are all connected by party walls." *Id.* ¶ 2.

"A public alley runs along the north side of [Lot 5]. A public street, Grant Place, runs along the south side of [Lot 1]. The east side of the properties, which is also the back of the properties, is bordered by another property. A private alleyway runs along the east nine feet of each of the lots." *Id.* ¶ 3.

"In 1874, Lots 1 through 5 were owned as a single parcel of land by Miner Porter and Mary A. Porter. In August of 1874, the Porters subdivided the parcel into separate lots through a recording filed with the Cook County Recorder of Deeds. On June 4, 1877, a deed was recorded with the Cook County Recorder of Deeds whereby the Porters transferred Lot 5 to Charles Carpenter. The deed included language reserving the rights of an easement, which established the private alleyway. Specifically, the deed states in pertinent part: "[I]t is hereby agreed that the east nine (9) feet of the above described property shall be reserved as a private alley to be kept open as long as the owners of the four adjoining houses south may require." *Id.* ¶ 4.

"On June 26, 1878, through a deed recorded with the Cook County Recorder of Deeds, the Porters transferred Lots 2 through 4 to James Blair. The June 26, 1878, deed specifically excepted the "Nine (9) feet off the rear of said Lots, which is expressly reserved and set apart for an alley." *Id.* ¶ 5.

3

"On June 9, 1882, James and Elysa Blair transferred Lots 2 through 4 back to Miner Porter through a deed recorded with the Cook County Recorder of Deeds. The deed again excepted "the nine (9) feet off the rear of said Lots, which is expressly reserved and set apart for an alley." *Id.* ¶ 6.

¶ 6    In *Gupta*, plaintiff Sandeep Gupta, owner of Lot 4, sued the owners of Lot 5 seeking a declaratory judgment that he had an easement for vehicular ingress and egress over the private alley, including the portion of the private alley behind Lot 5, and a permanent injunction barring the Lot 5 owners from interfering with the easement. *Id.* ¶¶ 1, 7. The defendants denied that an easement existed. *Id.* ¶¶ 13-14. In support, they noted that the Trust, as owner of Lot 1, had built a garage on a portion of the private alley behind Lot 1, which prevented vehicular entry onto Lot 1 through the private alley. *Id.* ¶ 14. Additionally, the defendants noted that Michael Barry, then the owner of Lot 2, did not use the private alley for ingress and egress because he installed landscaping on the portion of the private alley behind Lot 2. *Id.* ¶ 15.

¶ 7    Van Arsdale filed interrogatory responses in *Gupta*, which this court characterized as mirroring the defendants' argument "that the condition and use of Lots 1 through 5 by their owners belied any suggestion of an easement across the east nine feet of the properties" *Id.* ¶ 21.

¶ 8    In *Gupta,* the circuit court granted summary judgment for the plaintiff, and this court affirmed. *Id.* In so finding, this court agreed with the circuit court that the private alley easement existed, and permitted both vehicular passage as well as pedestrian use. *Id.* ¶ 43. The court explained that the "private alley easement provided each of the owners of Lots 1 through 4 with vehicular access from the public alley along the northside of Lot 5 to the rear of their properties." *Id.* ¶ 37. The court further stated:

"[W]e believe that the private alley easement was intended to benefit each of the four owners of Lots 1 through 4 and, as such, the easement creating the private alley should remain in existence as long as any of the owners of Lots 1 through 4 requires that the private alley be kept open. Since plaintiff requires that the private alley be kept open, the easement has not terminated." *Id.*

¶ 9    *Gupta* was not the only prior litigation involving the easement that is relevant to the present case. In 1996, Ellen Lustig, the owner of Lot 2 at the time, filed a complaint in the circuit court of Cook County, alleging in relevant part that Lots 1 through 5 were "benefitted and burdened by a reciprocal easement for egress and ingress" through the private alley, and seeking a permanent injunction against each lot owner from "interfering, obstructing or otherwise impeding the use and enjoyment" of the easement. The circuit court entered a default judgment in favor of Lustig, finding that Lots 2, 3 and 4 were "burdened by an express easement for egress and ingress through, upon and across the nine foot private alley." The defendants filed a notice of appeal, but the appeal was ultimately dismissed. *Lustig v. American Nat'l Bank of Chicago,* No. 1-97-1507.

¶ 10    On November 4, 2019, the Trust filed the complaint at issue in this appeal. The Trust alleged that Lot 1 was "benefitted by an express easement for egress and ingress through, upon and across a nine foot private alley," and that Larsen was interfering with this easement by "repeatedly and consistently" parking his vehicle on the portion of the private alley behind Lot 2. The Trust sought a permanent injunction against Larsen's alleged trespass on plaintiff's easement.

¶ 11    In his answer, Larson generally denied the Trust's claims and stated two affirmative defenses. In his first affirmative defense, he claimed that the Trust had abandoned the easement.

Specifically, he claimed that the Trust's beneficiaries built a garage on Lot 1 that extended into the portion of the private alley behind Lot 1 and prevented vehicular entry onto the lot via the private alley. Larson contended that this showed the Trust's intent "to permanently abandon and surrender that portion of the easement, since [the Trust] cannot possibly move any item larger than 30 inches through the easement of Lot 1." Larsen continued that his vehicle, when parked, still provided for "access to or use of at least 36 inches of the easement on Lot 2."

¶ 12     Larsen's second affirmative defense was also based on the Trust's alleged abandonment of the easement. Larsen alleged that the Trust's failure to object to Barry's conduct while he owned Lot 2 left the Trust's beneficiaries with "no ability to move any items through the easement on Lot 2," which evidenced the Trust's intent to abandon its easement rights.

¶ 13     The Trust moved for summary judgment, stating in support that the deeds recorded in 1877, 1878, and 1882 combined to create an express easement for the benefit of Lots 1 through 5 and the burden of Lots 2 through 5. The Trust further contended the *Gupta* court held that the easement is only for traversing the private alley. It alleged that Larsen "repeatedly and consistently" parked his vehicle, which was "5 feet, 11 inches wide not including the two side mirrors" in the portion of the private alley behind Lot 2, which interfered with the Trust's easement.

¶ 14     The Trust attached Van Arsdale's affidavit to the motion, in which he stated that since the Trust purchased Lot 1 in 1989, he and Eckles had "consistently and repeatedly used the Private Alley over Lots 2 through 5 to access the Public Alley for garbage removal, transport of other items, walking with or without our bicycles and other general use." Larsen's vehicle, when parked, blocked approximately two-thirds of the portion of the private alley behind Lot 2, which caused the Trust's beneficiaries difficulty moving their garbage bins around the vehicle.

Regarding Barry's landscaping and other installations, including a wire mesh fence and doghouse, Van Arsdale stated that he and Eckles told Barry they expected him to comply if they requested he remove the items. Barry's installations did not limit the Trust beneficiaries' access through the private alley to the public alley. The Trust's counsel sent defendant a cease-and-desist letter regarding the parking on February 20, 2019.

¶ 15    The Trust also attached Barry's affidavit to its motion, in which Barry stated that, "At all times during the presence of the landscaping, wire mesh screen and doghouse in the Private Alley behind our Lot 2, [plaintiff's beneficiaries] were able to and did use the Private Alley behind our Lot 2." He further represented that he received plaintiff's beneficiaries' consent when he installed the items, and he "recognized and agreed that they had an easement over the full nine feet of the Private Alley behind my Lot 2."

¶ 16    The Trust argued there was no issue of material fact that Larsen's parking infringed on its easement. Specifically, it argued that the easement was for ingress and egress only, and did not include parking. Larsen's parked vehicle caused unreasonable interference with the Trust's easement because it "made a substantial portion" of the private alley area behind Lot 2 "impassable." The Trust further argued that Larsen's affirmative defenses failed because an easement cannot be extinguished by mere nonuse, the garage did not prevent the beneficiaries' access to the portion of the private alley behind Lot 2, and their continued pedestrian use of the easement and conduct with Barry indicated they did not intend to abandon the easement.

¶ 17    In a response to the Trust's request for admission of facts, Larsen admitted that he regularly parked his vehicle on the "eastern most 9 feet of Lot 2."

¶ 18    Larsen filed a response to the Trust's motion for summary judgment, and a cross-motion for summary judgment. Larsen's motions alleged that Lot 1 currently had a garage that extended

into the portion of the private alley behind Lot 1, and only opened onto Grant Place to the south. He also contended it had been "impossible" for Van Arsdale and Eckles to "transport garbage bins, bicycles or other items" through the portion of the private alley behind Lot 2 while Barry's installations existed. When Larsen bought Lot 2 in November 2016, he removed Barry's installations. On November 24, 2016, Larsen informed Eckles that he intended to park on the portion of the private alley behind Lot 2. Eckles responded that Van Arsdale would be "mad" if Larsen did so. Larsen then parked his vehicle on the portion of the private alley behind Lot 2 for next 2 to 3 years.

¶ 19    Larsen attached his own affidavit to his response and cross-motion, in which he stated that after he received the cease-and-desist letter, he began parking "as close as possible to the fence." Before the letter, the Trust's beneficiaries did not complain to Larsen about his parking following the November 24, 2016 conversation. When Larsen's vehicle is parked close to the fence, a 37-inch opening remains, which provides the Trust's beneficiaries sufficient space through which to move their garbage bins. Larsen further noted that in Barry's sales listing, he indicated there was a parking spot behind the lot.[1]

¶ 20    Larsen also attached the Trust's response to Larsen's first set of interrogatories, in which the Trust stated that its beneficiaries could not receive deliveries via the private alley because Larsen's parked vehicle blocked over six feet of the private alley on Lot 2.

¶ 21    In Van Arsdale's affidavit in the *Gupta* litigation, also attached to defendant's filing, Van Arsdale stated, in relevant part, "During the period of 1989 through the present, there has been no use of Lots 1 or 5, for automobile or truck ingress and egress for the occupants of Lots 2 through 4, or for deliveries to Lots 2 through 4," with the exception of Gupta's conduct.

---

[1] Defendant attached a video recording to his filing allegedly depicting garbage bin movement, but this video is not included in the record on appeal.

¶ 22 Larsen argued that "the undisputed facts establish that plaintiff knowingly and voluntarily ceded its rights to the Easement" or, alternatively, "knowingly gave up its right to all but 33 inches of the Easement given the garage and other impediments plaintiff has installed on Lot 1." He also argued that his conduct did not constitute trespass, even if the Trust did not abandon the easement, because he did not "interfere with plaintiff's actual use of the Easement."

¶ 23 In reply, the Trust denied that it abandoned the easement, and maintained that Larsen's conduct constituted trespass. The Trust contended that, pursuant to *Gupta*, it had the right to use the easement to transport smaller items via vehicle north from the public alley through the private alley area on Lot 2 for delivery onto Lot 1.

¶ 24 On July 16, 2021, the circuit court granted the Trust's motion for summary judgment, awarded it nominal damages of $10.00, and entered a permanent injunction barring Larsen from parking his vehicle in the portion of the private alley behind Lot 2 or otherwise interfering, obstructing, or impeding the Trust's easement use. In so finding, the court stated that the parties agreed by stipulation that the easement over the private alley was "expressly granted since or before 1874 for the use of the five homes," and cited *Gupta* for the proposition that the easement permitted ingress and egress "by foot or by vehicle." The court found that the Trust's beneficiaries "communicated to Barry that they were permitting him to place [the installations] on the Easement without relinquishing their easement rights," and further that during Barry's ownership, the Trust's beneficiaries continued to use the easement to access the public alley for "ingress and egress, garbage removal, transportation of items, walking with or without their bicycles, and other general uses." The court found Larsen parked his vehicle on the portion of the private alley behind Lot 2 despite Eckles's warning on November 24, 2016.

¶ 25    The court rejected Larsen's argument that plaintiff abandoned its easement, noting that the Trust contended that (1) its beneficiaries testified that they continued to use the easement for pedestrian purposes from the time of its purchase, (2) the beneficiaries approved Barry's structures with the understanding that they could withdraw that permission in the future, (3) the Trust participated in the *Gupta* matter to protect its easement, (4) Eckles objected to Larsen's parking on November 24, 2016, and (5) the Trust issued a cease-and-desist letter to Larsen on February 20, 2019. The circuit court also rejected Larsen's partial abandonment theory because he did not present any authority that Illinois recognized such a theory.

¶ 26    The circuit court explained that Larsen's conduct constituted a trespass on the easement because he "intentionally parked" his vehicle on the private alley, quoting *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 82, for the proposition that, "rendering an easement, used as a driveway, unpassable is an unreasonable interference and therefore a trespass."

¶ 27    On July 31, 2021, the circuit court entered a final judgment of permanent injunction, reiterating the findings in its July 16, 2021 decision, awarding the Trust $10.00 in nominal damages and $459.21 in costs, and enjoining Larsen from parking a vehicle on the portion of the private alley behind Lot 2 and from interfering, obstructing, or impeding the Trust's use and enjoyment of the easement. Larsen timely appealed.

¶ 28                                ANALYSIS

¶ 29    On appeal, Larsen first argues that the circuit court erred in granting summary judgment in favor of the Trust because the undisputed material facts show that the Trust abandoned the easement. The Trust contends that the undisputed facts demonstrate it did not abandon its easement rights.

10

¶ 30  Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits" demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). The parties here filed cross-motions for summary judgment, which typically indicates there are no disputed material facts, though we note that the mere filing of cross-motions for summary judgment does not conclusively establish that there is no issue of material fact. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review *de novo* the circuit court's decision on cross-motions for summary judgment. *Id.*

¶ 31  "An easement is a right or privilege in the real estate of another." *Nationwide Financial, LP v. Probuda*, 2014 IL 116717, ¶ 29. The land benefitting from the easement is the dominant estate, and the land burdened by the easement is the servient estate. *JS II, LLC*, 2012 IL App (1st) 063420, ¶ 32. Here, the Trust possesses the dominant estate and Larsen, the servient estate.

¶ 32  The easement at issue is an express easement, which is "created by agreement between the owners of the dominant and servient estates." *Id.* The dominant estate "is entitled to the necessary use of the easement," defined as "such use as is reasonably necessary for the full enjoyment of the premises." *Flower v. Valentine*, 135 Ill. App. 3d 1034, 1039 (1985). The dominant estate may abandon its easement, but an express easement cannot be abandoned by nonuse. *Id.* Instead, "there must be, in addition to [nonuse], circumstances showing that it was the intention of the dominant owner to abandon the use of the easement." *Id.* "[N]onuse cannot be used to vitiate the clear intent and permanence that is necessarily inherent in easements for ingress and egress." *Erday's Clothiers, Inc. v. Spentzos*, 228 Ill. App. 3d 540, 549 (1992).

¶ 33  The agreed facts here show that an express easement exists, and existed at all relevant times, for the benefit of the owners of Lot 1, here the Trust and its beneficiaries, Van Arsdale

and Eckles. The easement is for ingress and egress, whether pedestrian or vehicular, through the private alley located behind Lots 2 through 5. The Trust purchased Lot 1 in 1989, and from that time on, its beneficiaries did not use the private alley for vehicular ingress and egress, but did use it for pedestrian purposes, and installed a garage that prevents vehicular entry onto Lot 1 via the private alley. The Trust's beneficiaries did not prevent Barry's installations under the understanding that the Trust retained its easement rights. In 2016, Larsen informed Eckles he intended to park his vehicle on the portion of the private alley behind Lot 2. Eckles objected, but defendant began parking in the area anyways, prompting the February 20, 2019 cease-and-desist letter, and subsequently this suit.

¶ 34    On this record, we find that the agreed facts show the Trust has not abandoned its easement as a matter of law, and thus the circuit court did not err in granting summary judgment on this issue. For a dominant estate to abandon an easement, it must demonstrate its clear intent to do so. The agreed facts show that the Trust never expressed this intent, and that it cannot it be inferred from the Trust beneficiaries' conduct. On the contrary, the beneficiaries continued to use the private alley for pedestrian ingress and egress,[2] explicitly told Barry it intended to retain its easement rights throughout the time Barry maintained his landscaping, fence, and doghouse, and informed Larsen they did not assent to his parking on the portion of the private alley behind Lot 2.

¶ 35    Larsen nonetheless contends that certain facts show the Trust intended to abandon the easement, primarily emphasizing the beneficiaries' admission that they had not used the private alley for vehicular ingress and egress from the time it purchased Lot 1, and the garage, which

---

[2] We note that Larsen disputes that the Trust actually moved its garbage bins north to the public alley, citing indications from the Trust's representations in *Gupta* that it moved them south to Grant Place. This argument is irrelevant, however, because Larsen does not dispute the Trust's representation of some pedestrian use.

prevents vehicular entry via the private alley onto Lot 1. He also cites the Trust's conduct in the *Lustig* and *Gupta* lawsuits, its permission of Barry's installations, and the beneficiaries' failure to further object to Larsen's parking in the time frame between the November 24, 2016, conversation and the February 20, 2019 cease-and-desist letter, as all indicating the Trust's intent to abandon its easement rights.

¶ 36 We do not agree that any of this conduct supports the conclusion that the Trust intended to abandon the easement. First, the fact that Van Arsdale and Eckles do not currently use the easement for vehicular ingress and egress merely constitutes nonuse, and it is well-established that evidence of nonuse does not establish intent to abandon. See *Flower*, 135 Ill. App. 3d at 1039. Although the beneficiaries do not currently use the private alley for vehicular ingress and egress to Lot 1, and did not do so in the past, the easement protects the *right* of current or future Lot 1 owners to traverse the easement via vehicle. See, *e.g.*, *Keessen v. Zarattini*, 119 Ill. App. 2d 284, 288, 290-91 (1969) (court affirmed injunction requiring servient estate to remove a five-foot impediment from a nine-foot alley where dominant estate had easement for ingress and egress, rejecting argument that the structure did not affect dominant estate's current ingress and egress usage). Although the garage which the Trust constructed in 1998 is a permanent structure, it could be demolished should the Trust so choose, at which time the Trust could then exercise its right to use the private alley for vehicular ingress and egress to Lot 1. Additionally, should the Trust sell the property in the future, the easement could be relevant and valuable if the future buyer decided to remove the garage to facilitate vehicular entry onto Lot 1 via the easement.

¶ 37 Additionally, we find that neither the Trust's positions in prior litigation nor the condition of the property during Barry's ownership demonstrate an intent to abandon its easement rights into the future. The Trust's positions during the *Lustig* and *Gupta* lawsuits do not demonstrate

any intent to abandon. In *Lustig*, the circuit court dismissed the Trust's predecessor as a party while ruling for Lustig that the easement existed over Lots 2, 3, and 4; there was no positive indication in the case that the Lot 1 owner to relinquish any easement rights. As to *Gupta*, Larsen argues that the Trust's beneficiaries took the position that no easement existed, but this is inaccurate. Instead, the Trust's stated position in *Gupta*, as shown through Van Arsdale's affidavit, related only to vehicular use of the private alley. Thus, at most, the record here shows that the Trust's position in *Gupta* reflected the Trust's possible misunderstanding of the full scope of its rights under the easement, not any intent to relinquish a right it believed it possessed.

¶ 38    Regarding the Trust's conduct towards Barry, we again note that nonuse, including the permission of temporary obstructions such as the ones Barry installed, does not qualify as intent to abandon. See *Chicago Title & Trust Co. v. Wabash-Randolph Corp.*, 384 Ill. 78, 93 (1943). Moreover, while the parties dispute whether the beneficiaries could access the portion of the private alley behind Lot 2 during Barry's ownership, this is also irrelevant because Larsen does dispute that the beneficiaries permitted Barry's conduct, as Barry himself confirmed. Larsen requests that we find Barry's affidavit incredible because the record shows that easement was in fact impassible by the beneficiaries. It is undisputed, however, that this information is outside Larsen's personal knowledge. Both Barry and the beneficiaries, the individuals with first-hand knowledge of the issue, represent to the contrary in sworn affidavits, we do not believe it appropriate to reject Barry's affidavit as incredible. See *Ridenour v. Carl Sandburg Village No. 7 Condominium Association*, 402 Ill. App. 3d 532, 535-36 (2010) ("On appeal from the entry of summary judgment, the reviewing court is not to judge the strength of the evidence or weigh the credentials, credibility, and testimony of one deponent against another.").

¶ 39     Larsen also does not dispute that Eckles warned him about parking on the portion of the private alley behind Lot 2, and that during the two to three years he parked on the portion of the private alley behind Lot 2, the Trust used that area for pedestrian purposes. In sum, none of the conduct Larsen cites provides a clear indication that the Trust intended to abandon its easement.

¶ 40     Larsen argues that even if we find the Trust did not abandon the easement entirely, we should recognize a new legal theory in Illinois of partial abandonment, and conclude pursuant to that theory that the Trust abandoned a portion of its easement by constructing the garage. We need not determine whether such a claim is cognizable here, however, because the act of building the garage did not demonstrate an intent to relinquish any easement rights, partial or otherwise. Larsen argues that the Trust cannot use more than 33 inches of the easement due to the garage's location, but this is simply inaccurate. The easement is over the private alley portions behind Lots 2 through 5. Though one cannot currently enter Lot 1 via a vehicle through the private alley, the full nine-foot-wide portion of the private alley behind the other lots, including Lot 2, remains accessible, and the beneficiaries retain the right to use those areas for ingress and egress purposes. Beyond pedestrian use, this includes traversing the private alley via vehicle to then enter Lot 1 on foot, as might be done when using rideshare or taxi services, and receiving deliveries from smaller vehicles able to traverse the nine-foot width of the private alley, neither of which requires the beneficiaries to impermissibly park a vehicle on Lot 2, as defendant argues. Thus, even if Illinois recognized the doctrine of partial abandonment, it would not provide Larsen any relief.

¶ 41     Larsen next argues that the circuit court erred in granting summary judgment because his conduct did not constitute a trespass on the easement.

¶ 42    Because the dominant estate has the right to use an easement for all reasonably necessary uses, the servient estate owner can only "use his land in any manner that does not materially interfere with or obstruct" the dominant estate's usage. *McMahon v. Hines*, 298 Ill. App. 3d 231, 239 (1998). The dominant estate "has the right of use of the easement to the exclusion of the owner of the servient estate when its intended or actual use unreasonably interferes with the dominant estate's use." *JS II, LLC*, 2012 IL App (1st) 063420, ¶ 82. Whether a servient estate's usage of its property constitutes an unreasonable interference with the dominant estate's easement is an issue of fact, but "[i]t is beyond contention that rendering an easement, used as a driveway, unpassable is an unreasonable interference and therefore a trespass." *Id.*

¶ 43    We find that the agreed facts show Larsen's parking of his vehicle on the portion of the private alley behind Lot 2 constituted unreasonable interference with the easement as a matter of law, and thus the circuit court did not err by granting summary judgment. As explained above, the easement is for ingress and egress from Lot 1 via the private alley through Lots 2 through 5 to the public alley. The parties do not dispute that, as the *Gupta* court found, this includes vehicular ingress and egress. Larsen's vehicle blocks a significant portion of the private alley when parked on the portion of the private alley behind Lot 2, and neither party disputes that this prevents a vehicle from traversing through Lot 2 via the private alley to the garage on Lot 1. Thus, Larsen obstructed an easement meant to be used as a driveway, constituting unreasonable interference. *Id.*

¶ 44    Larsen also argues that the parked vehicle does not constitute unreasonable interference because the beneficiaries do not currently use the private alley for vehicular ingress and egress, and indeed cannot currently use it to enter Lot 1 because of the garage. This argument fails because just as nonuse does not constitute abandonment, current use of the easement by the

dominant estate does not dictate what types of conduct by the owners of the servient estate constitute unreasonable interference. See *Erday's Clothiers, Inc.*, 228 Ill. App. 3d at 549.

¶ 45    *Erday* is instructive on this point. There, the servient estate owner placed an immobile dumpster in an area over which the dominant estate maintained an easement for ingress and egress. *Id.* at 550. The dominant estate sued, and the circuit court ruled for the servient estate, reasoning in relevant part that the dumpster did not materially interfere with the dominant estate's easement because the dominant estate did not currently use the easement area for vehicular traffic, specifically deliveries. *Id.* at 549. The *Erday* court rejected this argument, finding that the circuit court erred in reasoning "that since the only current use of the easement area by the plaintiff was as an emergency exit," the dumpster's presence was "not inconsistent with the plaintiff's use." *Id.* This was incorrect because by that reasoning, "a dominant easement owner could [lose] substantial rights of ingress and egress by mere nonuse," which was "inconsistent with the long-standing rule that an easement cannot be lost by mere nonuse." *Id.* The same principle applies here; although the Trust is not currently using the private alley for vehicular ingress and egress, it maintains the right to do so pursuant to the easement, and Larsen's parked vehicle unreasonably interferes with that right. See, *e.g.*, *Keessen*, 119 Ill. App. 2d at 288, 290-91; see also *Seymour v. Harris Trust*, 264 Ill. App. 3d 583, 602-03 (1994) (holding that a dominant estate owner has right to use the full width of an easement "except for natural obstructions that existed at the time of the easement and were not placed there by the owner of the servient estate") (citing *Flower*, 135 Ill. App. 3d at 1040)).

¶ 46    The parties have extensively briefed the degree to which the presence of Larsen's parked vehicle interfered with pedestrian access from Lot 1 through the portion of the private alley

17

behind Lot 2, but, in light of our findings above, we do not find this information relevant to our disposition.

¶ 47　Finally, we reject Larsen's argument that the doctrine of *laches* bars plaintiff's claim here. This argument fails for two reasons. First, Larsen raised this argument for the first time in his reply brief, and an argument cannot be raised for the first time in a reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Second, to demonstrate *laches*, a party must show both delay and that the defendant suffered prejudice or hardship due to it. *Erday*, 228 Ill. App. 3d at 547. Here, Larsen makes no argument as to how he suffered prejudice due to the Trust's alleged delay, nor could he, because Eckles told Larsen not to start parking on the portion of the private alley behind Lot 2 before defendant began doing so.

¶ 48　　　　　　　　　　　　　　CONCLUSION

¶ 49　The agreed material facts demonstrate as a matter of law that plaintiff did not abandon its easement and that defendant's conduct constituted a trespass upon that easement. Accordingly, the circuit court did not err in granting summary judgment and a permanent injunction in favor of plaintiff.

¶ 50　Affirmed.